2000 UT 4

**PROMAX DEVELOPMENT CORPORATION, Plaintiff and Appellant,**

v.

**Rick F. RAILE and Martha K. Raile, Defendants and Appellees.**

No. 980087.

Supreme Court of Utah.

Jan. 11, 2000.

Rehearing Denied March 2, 2000.

Rex E. Madsen, Korey D. Rasmussen, Salt Lake City, for plaintiff.

Theodore E. Kanell, Stephen P. Horvat, Salt Lake City, for defendants.

HOWE, Chief Justice:

## INTRODUCTION

¶ 1  Plaintiff ProMax Development Corporation appeals from a judgment dismissing its complaint against defendants Rick and Martha Raile for mechanic's lien foreclosure, breach of contract, and unjust enrichment.

## BACKGROUND

¶ 2  We state the evidence in the light most favorable to the Railes, who were the prevailing party below.  During the spring of 1994, Rick and Martha Raile, a married couple, verbally agreed to hire ProMax Development Corporation to build a home for them for $300,000 excluding the lot and landscaping.  The agreement was made between the Railes and their longtime friend, Phil Bates, one of ProMax's principals.

¶ 3  After entering into the agreement, the Railes purchased a building lot with money obtained from the sale of their previous home.  They also obtained a $300,000 construction loan.  In about May of 1994, ProMax began constructing the home.  Its goal was to have the home completed by October 1, 1994, so that it could be exhibited in the Parade of Homes, a sale promotion sponsored by home builders.  When the Railes expressed concern over the cost of the home, Bates assured them that ProMax could build the home within the $300,000 budget because it was going to be in the Parade of Homes and suppliers would therefore provide ProMax with discounts of up to forty percent.

¶ 4  In about August of 1994, Bates told the Railes that ProMax would need additional money to complete the home.  They applied for additional financing and were approved for a takeout loan of $330,000.  The home was completed by October 1 and was exhibited in the Parade of Homes.  A closing on the permanent home loan was scheduled for October 12, but prior to closing, Bates again told the Railes that ProMax needed more money to cover construction costs.  The Railes then agreed to pay an additional $33,505.32 to ProMax as full and final payment for the home construction.  On ProMax's behalf, Bates then signed documents confirming that ProMax would accept the payment from the Railes as a final payment.  He also signed a statement for a title company acknowledging the total payoff amount, a lien guaranty certifying there were no outstanding amounts owed for the home construction, and a lien waiver relinquishing all lien rights to the home.

¶ 5  At the closing, all necessary papers were signed, and ProMax received a check for $33,505.32 as payment in full for constructing the home.  Following the closing, however, Bates approached the Railes and asked them to sign a Real Estate Purchase Contract ("REPC") representing that ProMax needed to provide it to the bank.  Rick Railes signed the document, even though the purchase price and financing amounts were left blank, and per Bates' request, Rick backdated the REPC to April 20, 1994.  Bates then presented Martha Railes with the REPC for her signature, but when she expressed concern because the document did not list the purchase price and financing amounts, Bates told her that he would fill in the amounts later by putting in the numbers the bank needed to see.

¶ 6  At some point after the Railes signed the REPC, Bates filled in the blank lines for the purchase and financing amounts.  He listed the total purchase price of the home as $508,000, including a fictitious $30,000 earnest money deposit and $80,000 the Railes

supposedly paid to ProMax for the building lot.

¶ 7 Approximately one week after the closing, Bates told the Railes that they owed ProMax an additional $5,000 for a lot reservation fee and landscaping. The Railes paid the money. Several weeks later, Bates told the Railes that they owed ProMax an additional amount exceeding $136,000 for constructing the home. This time the Railes refused to pay any additional monies, and ProMax responded by filing a mechanic's lien and this suit. Specifically, ProMax sought the mechanic's lien foreclosure, damages for breach of contract, and recovery for unjust enrichment.

¶ 8 The parties agreed to a bench trial, and after the close of the evidence, the trial court found in favor of the Railes. It concluded that the documents the Railes signed at the loan closing proved that an accord and satisfaction had occurred, and it dismissed ProMax's complaint with prejudice. The judgment, entered on October 1, 1997, provided in part that

> plaintiff's complaint be dismissed with prejudice and upon the merits, with costs being awarded to the defendants after an appropriate hearing on taxation of costs as provided by Section 38-1-18, Utah Code Ann. (1953 as amended), said judgment to bear interest at the legal rate until paid.

¶ 9 Subsequently, the Railes moved for the taxation of costs, and after a hearing, the trial court entered an order on December 1, 1997, awarding them $7,656 for the fees of one of their attorneys, plus $1,336.10 in court costs, for a total of $8,992.10. The court denied any award of attorney fees for a second attorney who had represented the Railes, stating that his affidavit lacked "the specificity necessary to sustain an award of attorney fees." Ten days later, the Railes moved to alter or amend the order to increase the award of fees to $28,291.50, apparently to cover the fees of the second attorney and a third attorney who had previously represented them. The court partially granted the motion by an order on February 9, 1998, rescinded its December 1 order, and increased the Railes' award of attorney fees to $20,791.50. No mention was made of the

$1,336.10 in court costs. ProMax filed a notice of appeal on February 13, 1998, assailing the judgment insofar as it holds that the Railes proved an accord and satisfaction. Promax has not raised the issue of the award of attorney fees to the Railes. The Railes cross-appeal, assigning as error the failure of the trial court to award them the $1,336.10 in court costs and $7,500 in attorney fees paid to the third attorney.

## ANALYSIS

### I. JURISDICTION

¶ 10 The Railes move to dismiss ProMax's appeal as being filed untimely. They argue that the trial court entered final judgment on October 1, 1997, but ProMax did not file its notice of appeal until February 13, 1998, long past the thirty days prescribed for filing by Utah Rule of Appellate Procedure 4(a). The Railes assert: (1) the October 1 judgment was a *final* judgment as required by Utah Rule of Appellate Procedure 3 and is appealable because it disposed of the merits of the action; (2) their post-trial motions—to have the amount of attorney fees determined and costs taxed—dealt with a different matter, collateral to the merits of the action; and (3) the orders of the court on December 1, 1997, and February 9, 1998, did not change or alter the October 1, 1997, judgment in any respect and therefore did not prevent that judgment from being final on the date of its entry, thereby starting the appeal time to run. They rely on *Nielson v. Gurley*, 888 P.2d 130 (Utah Ct.App.1994), where the court of appeals held that the amendment of a judgment to award the prevailing party court costs did not interrupt the running of the thirty-day appeal time.

¶ 11 We deny the motion to dismiss ProMax's appeal. In *Adamson v. Brockbank*, 112 Utah 52, 185 P.2d 264 (1947), we stated:

> [W]here a belated entry merely constitutes an amendment or modification not changing the substance or character of the judgment, such entry is merely a nunc pro tunc entry which relates back to the time the original judgment was entered, and does not enlarge the time for appeal; but where the modification or amendment is in some

*material matter,* the time begins to run from the time of the modification or amendment.

112 Utah at 60, 185 P.2d at 268 (emphasis added). The two orders made on attorney fees subsequent to the October 1 judgment were modifications or amendments in a "material matter." The first order awarded the Railes $7,656 in attorney fees, and the second order increased that amount to $20,791.50. These amendments were materially different from the amendment made in *Nielson v. Gurley,* where the modification or amendment was to recite that the prevailing party was entitled to court costs. As the court of appeals pointed out in that case, the amendment did not "affect any substantive rights running to the litigants. Indeed, the court's amendment to the judgment was completely unnecessary because costs are awarded as a matter of course to the prevailing party unless the court otherwise orders." 888 P.2d at 133 (citing Utah R. Civ. P. 54(d)(1)).

¶ 12 Utah Code Ann. § 38–1–18, which governs the award of attorney fees in this case, provides that in any action to enforce a mechanic's lien, "the successful party shall be entitled to recover a reasonable attorney's fee, to be fixed by the court, which shall be taxed as costs in the action." Where attorney fees are awarded to a party, whether denominated as an item of "costs" or not, and the amount is not stated in the judgment rendered on the merits of the case, and evidence must be taken afterwards by the trial court either by affidavit or live testimony, there is no final judgment for the purposes of appeal until the amount of the fees has been ascertained and granted. However, when, as in *Nielson,* no attorney fees are involved but only court costs, which are usually small statutory amounts or liquidated amounts, such costs can be added later to a judgment without affecting its finality.

¶ 13 We are aware that in *Taylor v. Hansen,* 958 P.2d 923, 927 (Utah Ct.App.1998), the court of appeals adopted the rule enunciated by the United States Supreme Court in *Budinich v. Becton Dickinson & Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988). The Court held that a decision on the merits is a final decision for purposes of appeal, whether or not there remains for adjudication a request for attorney fees or a determination of the amount of the fees. We decline to follow that rule. Instead, we follow the principle set out in *Meadowbrook, LLC v. Flower,* 959 P.2d 115, 118 (Utah 1998).

¶ 14 As pointed out in *Meadowbrook,* a party's decision to appeal on the underlying merits may often depend upon the size of the attorney fees awarded. *See id.* We there addressed the appropriate timing for parties' requests for attorney fees. While not strictly apposite to the instant case, our reasoning there is useful. Explaining our holding, we presented the following model:

> [A] party who appeals the judgment on the underlying merits may also wish to appeal the attorney fee award. In jurisdictions that allow a motion for such fees to be brought after the time for filing an appeal on the original judgment has expired, the appellant would have to file a second appeal based upon the attorney fee award. Judicial economy during the appeals process would not be furthered in any way by requiring such piecemeal appeals. Moreover, a party's decision to appeal on the underlying merits may largely depend upon the size of the attorney fee award.

*Id.* Applied to the instant case, this reasoning is sound. It will save the resources of the parties and this court if the issue of attorney fees can be determined in the same appeal in which the merits of the underlying judgment are examined. Otherwise, a second appeal must be taken to challenge the amount of attorney fees awarded subsequent to the judgment on the merits and then examined in the light of the judgment on the merits. This would be wasteful.

¶ 15 We therefore hold that, in the interest of judicial economy, a trial court must determine the amount of attorney fees awardable to a party before the judgment becomes final for the purposes of an appeal under Utah Rule of Appellate Procedure 3. This holding will serve both litigants and this court well, by "enabl[ing] an appellant to appeal all issues, including an award of attorney fees, in a single notice of appeal." *Meadowbrook,* 959 P.2d at 119.

¶ 16 The rule which we adopt is consistent with a prior order entered by this court in this case. ProMax originally filed a notice of appeal on December 12, 1997, but later voluntarily moved to dismiss that appeal after the Railes moved the trial court on December 11 to alter or amend its December 1 order awarding attorney fees. ProMax apparently recognized that there had not yet been a final determination as to the amount of attorney fees to which the Railes were entitled. In that order, this court stated:

> Plaintiff's motion to withdraw notice of appeal without prejudice is hereby granted. This court has no jurisdiction over the appeal, inasmuch as defendants have a motion pending before the trial court which renders the judgment entered by the trial court non-final. A new appeal must be filed within thirty days after the trial court enters a formal order on defendant's motion. *See Swenson Assocs. Architects v. State*, 889 P.2d 415 (Utah 1994).

## II. ACCORD AND SATISFACTION

¶ 17 ProMax contends that the trial court erred in holding that the lien waiver, final payoff disclosure, and other mortgage documents generated at closing amounted to an accord and satisfaction between ProMax and the Railes. We review the trial court's ruling for correctness.

¶ 18 When the Railes orally contracted with ProMax to construct a home for them, the agreed-upon cost, according to the Railes, was $300,000. Several months later, ProMax demanded more money to complete the construction. The Railes' applied for an additional loan to cover ProMax's increased building costs. After the home was completed, ProMax again asked the Railes for more money to cover construction costs. To expedite closing and move-in dates, the Railes agreed to make one final payment to ProMax in the amount of $33,505.

¶ 19 At closing, ProMax signed various documents confirming that the $33,505 represented the Railes' final payment to ProMax. These documents included a loan payoff statement for First American Title Co. and a lien guaranty certifying that there were "no unpaid bills for materials or labor furnished for the construction and erection, repairs or improvements" to the Railes' home. ProMax also signed a lien waiver which stated that upon negotiating the Railes' check for $33,-505, ProMax "waives, releases and relinquishes all right of lien or claims payee now has to date upon the property described below," and "warrants and guarantees that payment in full has been made by payee to all laborers and suppliers of labor and all materials to said premises incurred to date."

¶ 20 ProMax contends that these documents do not meet the requirements for an accord and satisfaction. "An accord and satisfaction arises when the parties to a contract agree that a different performance, to be made in substitution of the performance originally agreed upon, will discharge the obligation created under the original agreement." *Golden Key Realty, Inc. v. Mantas*, 699 P.2d 730, 732 (Utah 1985) (citations omitted). A party seeking to prove an accord and satisfaction must show (1) an unliquidated claim or a bona fide dispute over the amount due; (2) a payment offered as full settlement of the entire dispute; and (3) an acceptance of the payment as full settlement of the dispute. *See Marton Remodeling v. Jensen*, 706 P.2d 607, 609–10 (Utah 1985).

¶ 21 In this case, we find that there was evidence from which the trial court could find that the requirements of an accord and satisfaction between ProMax and the Railes were met. There is no question that there was a dispute between the two parties as to the amount of money the Railes owed ProMax for constructing the home. According to the Railes, ProMax was to construct the home for a total cost of $300,000. ProMax contended that the actual price agreed upon was the construction cost plus an additional $50,000 builder's fee. The dollar amount ProMax was charging the Railes for the home construction changed several times during the construction period. Documents presented at trial show that ProMax claimed the Railes owed amounts which ranged from $300,000 to $382,000. Significantly, the amount that the Railes owed ProMax was a disputed issue almost from the beginning of the construction relationship.

¶ 22   Second, we find that the evidence supports the trial court's finding that a final payment amount was offered, accepted, and agreed upon by the parties as a full resolution and satisfaction of the disputed amount owed. With the total amount due in dispute, the parties offered and agreed to one final payment by the Railes in the amount of $33,505. This is evidenced by the testimony in the record and by several documents presented at trial showing that the Railes' payment to ProMax of $33,505 was a total payoff and satisfaction of the disputed amount of money owed for the home construction. It is of no consequence that there is no one written document signed by both ProMax and the Railes evidencing an accord and satisfaction. An accord and satisfaction need not be in writing. *See Golden Key Realty,* 699 P.2d at 732. The documents which were signed at closing by the parties, when considered together with the testimony they presented, provide evidence that supports the conclusion that an accord and satisfaction took place.

¶ 23   ProMax contends that the evidence presented was insufficient to support the trial court's conclusion that an accord and satisfaction had occurred. However, when the evidence is viewed in the light most favorable to the Railes, there is evidence to support the trial court's ruling in favor of the Railes. Simply because ProMax presented evidence that there was no accord and satisfaction between the parties, claiming instead that there was a "side agreement" for more money, does not mean that the Railes' evidence of an accord and satisfaction is insufficient to support the trial court's ruling.

¶ 24   ProMax points out that after the Railes closed on their home loan, the Railes entered into the REPC with ProMax which listed the price of the home at $508,000. ProMax asserts that this writing was the last of many documents executed by the Railes, and that it supersedes all prior documents, proving that the cost of the home exceeded what the Railes had paid. ProMax contends that even if there was an accord and satisfaction at closing between the parties, the REPC signed later constitutes a waiver of that accord and satisfaction. We disagree.

¶ 25   On the day of closing, a loan officer for Chase Manhattan Bank told ProMax that it needed a written document reflecting the terms of its agreement with the Railes. Thereafter, ProMax asked the Railes to sign the REPC and back-date it. Rick Raile signed the REPC even though the contract was left blank as to purchase price and financing amounts, and back-dated it April 20, 1994. When ProMax asked Martha Raile to sign the REPC, she expressed concern about signing the document because the purchase price and financing amounts had not yet been written on the REPC. Despite her concerns, Martha Raile signed the REPC after Bates told her, "Don't worry, Martha, I'm going to fill it in after, just to put the amounts to what the bank needs to see." At some point after the Railes had signed the REPC, ProMax completed the contract, showing the purchase price of $508,000, less amounts already paid.

¶ 26   The background of the REPC calls its credibility into question. There was evidence that it was neither a contract between the parties nor proof that an accord and satisfaction had not occurred. The Railes executed the REPC after the closing on their home, and they were led to believe that ProMax would "just put in the amounts the bank needs to see." However, ProMax wrote incorrect figures on the REPC and then attempted to use it to support its claim that the Railes owed more money. We agree with the trial court that the REPC has no legal bearing relative to an accord and satisfaction between the parties.

### III.  TRIAL BY MOTION

¶ 27   Following an initial two-day trial, the trial court and the parties participated in a telephone conference during which the parties stipulated that "[d]ue to the busy nature of the Court's docket, the issue of accord and satisfaction will be addressed by the parties through written briefs." The court went on to state that the briefs should be "styled as defendants' Motion for Summary Judgment," and it enumerated filing deadlines for motions and reply memoranda.

¶ 28 Per the stipulation, the parties filed their respective motions and memoranda with the court. ProMax now contends that the trial court erred by ruling against it because there were material issues of fact in dispute at the time of the court's ruling. We find no error. The stipulation to which Pro-Max voluntarily agreed does not state that the trial court would treat the motions as motions for summary judgment; rather, it stated that the case would be submitted through written briefs styled as motions for summary judgment. In this, the trial court was apparently referring to the briefing schedule and procedure, which includes an initial motion and memorandum, a motion and memorandum in opposition, and a reply memorandum. Other than following the briefing procedure of a typical motion for summary judgment, there is nothing to indicate that the trial court considered the stipulation as a motion for summary judgment. The initial brief the Railes submitted was styled as "Defendant's Supplemental Trial Brief," not as a motion for summary judgment. This procedure was simply a continuation of the trial. On disputed facts, the trial court ruled against ProMax.

## IV. VIABILITY OF ADDITIONAL CLAIMS

¶ 29 Finally, ProMax contends that if we conclude that the trial court did not err in ruling that an accord and satisfaction occurred, its claims against the Railes for breach of contract and unjust enrichment were still viable and should not have been dismissed. ProMax relies on an appraisal of the Railes' home that was for an amount in excess of what they paid ProMax. We find no merit to this argument. The market value of the home is of no consequence. The relevant factor is the existence of an accord and satisfaction. The trial court's determination, which we have affirmed, that the parties settled their dispute with an accord and satisfaction subsumes ProMax's claims for breach of contract and unjust enrichment.

## V. COURT COSTS AND ATTORNEY FEES

¶ 30 On their cross-appeal, the Railes contend that the trial court erred by not granting them their court costs. The Railes submitted a memorandum claiming $1,336.10 in court costs. Promax made no objection. The December 1 order awarded those costs to the Railes, along with $7,656 in attorney fees. In the February 9 order, which rescinded the December 1 order, the attorney fees were increased to $20,791.50, and the court costs previously awarded were not mentioned. It appears that this was done inadvertently. Therefore, we remand this case to the trial court to review its order of February 9, 1998, to determine whether the Railes should have been awarded costs in the amount of $1,336.10.

¶ 31 The Railes next contend that the trial court abused its discretion in failing to award them $7,500 in attorney fees for the services of a third attorney. The court reasoned that the attorney's affidavit originally submitted was inadequate and that the attorney had failed to supplement it even upon the court's invitation to do so. In fact, the attorney had supplemented his fee affidavit. Because we are in doubt regarding whether these fees were inadvertently denied or whether the trial court had some other basis for denial, we remand this issue for reexamination by the trial court.

¶ 32 Additionally, we hold that the Railes are entitled to attorney fees incurred in defending their judgment on this appeal. They were the "successful party" in the trial court and on appeal to this court. Our law provides that a party which successfully defends an appeal that arose out of a cause of action under a mechanic's lien is entitled to the attorney fees spent on appeal. *See* Utah Code Ann. § 38–1–18; *see also Management Servs. Corp. v. Development Assocs.*, 617 P.2d 406, 409 (Utah 1980); *Richards v. Security Pac. Nat'l Bank*, 849 P.2d 606, 612 (Utah Ct.App.1993). However, the Railes are not entitled to fees in pursuing their unsuccessful motion to dismiss this appeal.

## CONCLUSION

¶ 33 We hold that this court has jurisdiction over this appeal. The evidence supports

the judgment that an accord and satisfaction occurred between the parties. Therefore, we affirm in part and remand for reexamination of the denial of court costs and $7,500 in attorney fees. Additionally, the trial court shall fix reasonable attorney fees awardable to the Railes for defending the judgment on appeal, but not in pursuit of its motion to dismiss the appeal.

¶ 34 Associate Chief Justice DURHAM, Justice STEWART, Justice ZIMMERMAN, and Justice RUSSON concur in Chief Justice HOWE's opinion.