2001 UT 40

**RAILE FAMILY TRUST, By and Through its trustees, Rick and Martha RAILE, Plaintiff and Appellant,**

v.

**PROMAX DEV. CORP., Phil Bates, and Emigration Place Development, L.C., a Utah Limited Liability Company, Defendants and Appellees.**

No. 990322.

Supreme Court of Utah.

May 11, 2001.

Theodore E. Kanell, Stephen P. Horvat, Salt Lake City, for plaintiff.

Rex E. Madsen, Korey D. Rasmussen, Salt Lake City, for defendants.

## AMENDED OPINION

DURRANT, Justice:

¶ 1 Rick and Martha Raile, acting as trustees of the Raile Family Trust (the "Trust"), appeal the trial court's decision granting summary judgment to Promax Development Corporation, Emigration Place Development (collectively "Promax"), and Phil Bates. The Railes also appeal the court's decision awarding attorney fees to Promax.

## BACKGROUND

¶ 2 On appeal from a grant of summary judgment, we present the facts in the light most favorable to the non-moving party. *See Ryan v. Dan's Food Stores*, 972 P.2d 395, 399 (Utah 1998). We have already related many of the background facts pertaining to this case in *ProMax Development Corp. v. Raile*, 2000 UT 4, 998 P.2d 254 *("ProMax I")*. We relate here only the facts pertinent to the resolution of the instant case.

¶ 3 In 1994, Rick and Martha Raile arranged with Phil Bates, the principal for Promax, to build a house in Emigration Canyon. They now assert that they did so as agents or trustees of the Trust, which was understood to be the entity purchasing the house. The parties did not initially prepare a written contract. As construction progressed, a number of disputes arose concerning payment. On the date of closing, October 12, 1994, Bates prepared a real estate purchase contract ("the REPC") and had the Railes sign it. The Railes assert that the REPC was prepared solely to provide required documentation for additional financing from a bank and not as a statement of their agreement to have a house built for a given sum. They maintain that after the REPC was signed, Bates filled in a purchase price amount that was substantially higher than that to which they had actually agreed and also backdated the document to April 20, 1994. The REPC included a provision for attorney fees in the event of legal disputes.

¶ 4 On several occasions, Bates informed the Railes that they owed more money on the house. The Railes paid various amounts claimed by Promax, but then refused a demand for more than $136,000 in additional

construction fees. In May of 1995, Promax recorded a mechanic's lien on the property and filed suit in the district court. Judge Pat Brian conducted a bench trial and ruled in the Railes' favor. Judge Brian held that the parties had arrived at an accord and satisfaction of their claims prior to Promax's final demand for additional payment. Promax appealed, and we affirmed. *ProMax I*, 2000 UT 4, ¶ 33, 998 P.2d 254.

¶ 5 The Railes, as trustees of the Trust, filed this action in September 1996. They asserted that the Trust had been established in 1989 and had been the legal entity that actually purchased the home. The Railes presented claims for breach of contract, slander of title, and negligence arising out of Promax's construction of the home. They then amended their complaint to state a cause of action against Bates individually for breach of fiduciary duty. Promax moved for summary judgment, arguing that the Railes' failure to assert their claims as compulsory counterclaims in *ProMax I* barred the Railes from raising those claims in any subsequent action. Promax also asserted that the Railes' negligence claim was barred by the "economic loss" doctrine, which holds that tort claims may not be brought for purely economic damages that are otherwise subject to relief via contractual remedies. *See, e.g., Maack v. Resource Design & Constr., Inc.*, 875 P.2d 570, 579–81 (Utah Ct.App.1994).

¶ 6 The case was assigned to Judge Glenn Iwasaki, who granted in part Promax's motion for summary judgment. Specifically, Judge Iwasaki held that the Railes' negligence claim was precluded by the economic loss doctrine and that the slander of title claim failed as a matter of law because Promax's mechanic's lien "was proper and continues to be proper to the extent it may affect this case." [1]

¶ 7 The case was then reassigned to Judge William Barrett. Promax again moved for summary judgment on the contract and breach of fiduciary duty claims and Judge Barrett granted the motion. Specifically, Judge Barrett ruled as follows:

[T]he Raile Family Trust is estopped due to the Judgment and Findings ... entered in [*ProMax I*] from asserting its claims against defendants on the basis that the Railes were acting as trustees of the Raile Family Trust and not as individuals. The fact that the Railes acted individually in dealing with defendants has already been adjudicated and judicially established. The court finds that the [c]omplaint filed in this action constitutes an attempt to circumvent the trial court's ruling in [*ProMax I*]. Accordingly, plaintiff's complaint is dismissed, in its entirety, with prejudice.

Judge Barrett also awarded attorney fees to Promax, pursuant to the REPC. The Railes appeal all of these adverse holdings.

## ANALYSIS

■ ¶ 8 Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56(c). On appeal from the district court's ruling on summary judgment, we apply a correction of error standard, affording the trial court's rulings no deference. *See Stephens v. Bonneville Travel, Inc.*, 935 P.2d 518, 519 (Utah 1997).

■ ¶ 9 Promax presented below, and renews on appeal, its contention that the Railes' claims are barred by rule 13(a) of the Utah Rules of Civil Procedure. That rule provides, in relevant part, that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject-matter of the opposing party's claim." Promax asserts that the Railes' claims against Promax all arose out of the same transaction or occurrence that was the subject matter of Promax's initial claim in *ProMax I*, and the Railes were therefore obligated to bring all claims that they now raise in this action at the time they filed their answer in *ProMax I*. Promax maintains that the Railes thus forfeited their right to bring the claims in a separate action. Because we determine that this argument disposes of the

---

1. Judge Iwasaki also initially granted summary judgment on the Trust's breach of contract claim

but later reinstated that claim pursuant to the Trust's motion for reconsideration.

Railes' claims for breach of contract, slander of title, and negligence, we do not address the arguments relating to the economic loss doctrine or the propriety of Promax's mechanics' lien.

¶ 10 In *ProMax I*, the Railes prevailed based on their affirmative defense that an accord and satisfaction had been reached. The question for our determination is whether the claims now asserted by the Railes in this case should have been asserted as compulsory counterclaims in *ProMax I* and are therefore barred. The sole argument offered by the Railes is that they have acted in different legal capacities. They maintain that the Trust was the legal entity that contracted to build and purchase the house, and that now brings the claims in this case; but they also maintain that in *ProMax I* they answered the complaint as individuals and prevailed as individuals. They assert that they were therefore unable to raise counterclaims in their individual capacities, but were nonetheless empowered to defend on the merits and receive a judgment in their favor that included attorney fees.

¶ 11 We cannot sanction this attempt to exploit the purported ambiguity in legal capacities to evade the dictates of rule 13(a). If we grant that the Trust was the legal purchaser of the house, which is a necessary prerequisite for the Trust's standing to sue in this case, then we cannot accept the Railes' contention that they defended solely as individuals in *ProMax I*, and were not acting as either trustees or authorized agents of the Trust. If the Railes did not have the legal authority to represent the purchaser of the house in *ProMax I*, then it follows that they did not have the authority to raise any affirmative defenses other than the fact that they, as individuals, were not the proper parties in interest. Yet, they failed to move for dismissal based on Promax's failure to join an indispensable party under rule 12(b)(7) of the Utah Rules of Civil Procedure. Further, they asserted the affirmative defense of accord and satisfaction and received judgment on that basis. To properly do so, they must have had standing as authorized legal agents of the purchaser of the house, which they now maintain was the Trust.

Thus, we must assume that they acted as authorized agents of the Trust in *ProMax I*.

¶ 12 The purpose of rule 13(a) is to ensure that all relevant claims arising out of a given transaction are litigated in the same action. If named defendants believe that they are not the correct parties in interest and therefore cannot raise counterclaims, they have the obligation to formally defend on that ground and place all parties *and the court* on notice that such is being asserted as a defense to the action. In this case, if the Railes had the authority to pursue any affirmative defenses (other than to assert that they were not the proper party in interest) they likewise had the obligation under rule 13(a) to raise any available counterclaims arising out of the same transaction. To hold otherwise would eviscerate the purposes of rule 13(a) and allow a party to gain full advantage of the affirmative defenses afforded a genuine party in interest, while avoiding any obligation to raise counterclaims in the same action. Because the Railes failed to raise available counterclaims in *ProMax I*, they have waived the right to raise those same claims in a separate action. We therefore affirm the trial court's ruling that the Railes, acting as trustees of the Raile Family Trust, waived their right to bring any claims arising out of the same transactions that were the subject of the litigation in *ProMax I*.

¶ 13 However, with respect to the claim against Phil Bates individually for breach of fiduciary duty, the record in its current state does not provide an undisputed basis for holding that rule 13(a) acts as a bar. Rule 13(a) by its terms applies to claims the "pleader has against any opposing party." Bates prosecuted no claims against the Railes in his individual capacity in *ProMax I*. Therefore, he was not an opposing party in that capacity in that prior action. Promax and Bates argue on appeal that Bates acted only in his capacity as a principal for Promax, and that the Railes therefore have no claims against him individually. However, that assertion is a disputed fact that is clearly material to the question of whether rule 13(a) precludes the claim against him in this case. It was error for the trial court to

dismiss that claim on that ground. We reverse and remand with respect to the Railes' allegations against Bates individually.

¶14 Further, although the Railes waived their opportunity to bring claims in a separate action, the issue of whether the REPC provides a legitimate basis for fees is a distinct question. The fee award is based not on any distinct claim that the Railes waived, but on Promax's claim that the attorney fee provision in the disputed REPC is enforceable and that the Railes unsuccessfully prosecuted litigation that was covered by the REPC's attorney fee provision.[2]

¶15 At the very least, disputed issues of fact remain regarding the enforceability of the REPC. The Railes have consistently maintained that the REPC did not constitute their agreement, was obtained by fraud, and is therefore unenforceable in its entirety. Although we did not explicitly reach this issue in *ProMax I*, our decision affirmed the judgment that an accord and satisfaction had been reached at terms substantially less than the stated price in the REPC. *See ProMax I*, 2000 UT 4, ¶¶ 17–26, 998 P.2d 254. We also stated that "[t]he background of the REPC calls its credibility into question. There was evidence that it was [not] a contract between the parties. . . ." *Id.* at ¶ 26, 998 P.2d 254. Consequently, it was error for the trial court to award fees based on the REPC's attorney fee provision so long as disputed issues of material fact remained regarding its enforceability. We therefore reverse and remand the fee issue.

2. The Railes were awarded fees in *ProMax I*, but that award was premised on a provision of the mechanics' lien statute. *See ProMax I*, 2000 UT 4, ¶ 12, 998 P.2d 254 (noting that attorney fee issue in that case was governed by application of Section 38-1-18 of the Utah Code). Promax argues that we may affirm on the alternate statutory ground that the Railes failed to bring their action in good faith. *See* Utah Code Ann. § 78-27-56. However, we conclude that the record is insufficient for us to decide the issue on this ground. *See Green v. Turner*, 2000 UT 54, ¶ 19 n. 9, 4 P.3d 789. A finding of "bad faith" under Section 78-27-56 requires a specific finding of intent related to that allegation. *See Faust v. KAI*

## CONCLUSION

¶16 We affirm the district court's grant of summary judgment dismissing the Railes' claims against Promax on the ground that the Railes failed to assert their claims in this action as compulsory counterclaims in *ProMax I*. We reverse and remand, however, the court's rulings dismissing the claim for breach of fiduciary duty against Phil Bates individually and awarding Promax attorney fees. Disputed issues of material fact preclude judgment on those issues at this time.

¶17 Chief Justice HOWE, Associate Chief Justice RUSSON, Justice DURHAM, and Justice WILKINS concur in Justice DURRANT's opinion.

*Technologies*, 2000 UT 82, ¶ 16, 15 P.3d 1266. We do not agree with Promax's assertion that the trial court's findings concerning the rule 13 issue necessarily lead to the conclusion that the lawsuit was filed or prosecuted in bad faith. Indeed, at the hearing held on August 25, 1998, in which the question of attorney fees was addressed, the trial court stated, "I don't know that anybody acted in bad faith." Because the trial court relied wholly on a contractual theory to impose attorney fees and because the trial court remains in the best position to judge the intent with which the Railes' brought their action, we leave this issue to be decided on remand.