2010 UT 61

**DFI PROPERTIES LLC, Plaintiff and Appellee,**

v.

**GR 2 ENTERPRISES LLC, Defendant and Appellant.**

No. 20081067.

Supreme Court of Utah.

Nov. 2, 2010.

Carolyn Montgomery, Thomas B. Price, Salt Lake City, James H. Woodall, South Jordan, for plaintiff.

Karthik Nadesan, Salt Lake City, for defendant.

DURRANT, Associate Chief Justice:

## INTRODUCTION

¶ 1 We are asked to decide whether a trial court judge abused his discretion in entering default judgment against a defendant in an unlawful detainer action. The defendant, GR 2 Enterprises, is a limited liability company whose possession of certain real property was being disputed. In the course of the unlawful detainer action, one of the owners of GR 2 engaged in behavior that the district court, sua sponte, concluded was sanctionable under rule 11 of the Utah Rules of Civil Procedure. Having reached this conclusion, the court sanctioned the defendant by entering default judgment against it.

¶ 2 On appeal, it has become clear to this court that we lack subject matter jurisdiction over the matter. The judgment entered by the district court, although presented to us as final, explicitly reserves a number of issues, including the award of attorney fees, for later consideration by the district court. Because a judgment is not final for purposes of appeal if the judgment fails to resolve an outstanding request for attorney fees, we conclude that the order from which GR 2 appeals is not final. And because this court lacks jurisdiction over appeals from nonfinal orders, we do not have the authority to examine the issues raised in this appeal. Accordingly, we dismiss the appeal for lack of jurisdiction and remand this case to the district court.

## BACKGROUND

¶ 3 In setting forth the background of this appeal, we limit our exposition to the facts necessary to explain our conclusion. Further, because default judgment was entered on the eve of trial, the facts that gave rise to the wrongful detainer action remain disputed. Therefore, we do not pass judgment on the facts of the underlying dispute and proceed with caution to avoid inadvertently suggesting that we have done so.

¶ 4 GR 2 Enterprises is the name of a limited liability company formed by Juan Antonio Granados for the purpose of handling certain real estate transactions related to real property owned by Mr. Granados. Mr. Granados and his wife own GR 2.

¶ 5 DFI Properties is another limited liability company. DFI refinanced property owned by GR 2 in California so that GR 2 could purchase property in Utah. When GR 2 purchased the Utah property, DFI was the beneficiary of the trust deed. When GR 2 defaulted under the terms of this trust deed,

DFI purchased the property at a trustee's sale.

¶ 6 Throughout the course of these events, GR 2 took a number of actions that complicated DFI's ultimate acquisition of the property. For instance, GR 2 conveyed to multiple third parties fractional interests in both the Utah and California properties. These third parties then filed for bankruptcy. Pursuant to the automatic stay provision of the bankruptcy code, the trustee's sale of the Utah property was postponed. The California bankruptcy court ultimately concluded that these actions were undertaken to "delay, hinder, and defraud creditors." Even after this automatic stay was lifted, the trustee's sale could not proceed because GR 2 filed a separate bankruptcy action in Utah, which resulted in a separate automatic stay of proceedings against GR 2. The automatic stay imposed in connection with the Utah bankruptcy proceedings was also eventually lifted, at which point DFI purchased the Utah property at a trustee's sale. DFI then filed an unlawful detainer action seeking eviction of GR 2 from the Utah property.

¶ 7 GR 2 defended and counterclaimed on a number of grounds and alleged significant misconduct on the part of DFI. Chiefly, GR 2 asserted that DFI had fraudulently induced GR 2 to enter into the refinancing agreement and that this fraud made the deed of trust invalid. GR 2 also asserted that DFI's unlawful detainer action constituted abuse of process because DFI was aware that the deed of trust was being challenged in the Utah bankruptcy proceedings.

¶ 8 Even after the claims were properly before the district court, complications arose. First, in the Utah bankruptcy action, the bankruptcy trustee had moved to set aside the sale through which DFI acquired the property. Proceedings in the district court were postponed until the bankruptcy court's disposition of this issue. When the bankruptcy trustee's motion was denied in the ancillary bankruptcy proceeding, the district court, satisfied that the unlawful detainer action could proceed, established time lines for proceeding to trial. The trial was scheduled to begin on December 17, 2008.

¶ 9 The second complicating factor arose when GR 2 objected to this trial date on the basis that it could not conduct, in the time allowed, sufficient discovery to support its counterclaims and affirmative defenses. GR 2 sought to postpone the trial by several months so that it could undertake additional discovery. This request, though, would have conflicted with the expedited time line established by statute for resolving unlawful detainer actions. So the parties proceeded as if the trial were going to begin on December 17, 2008. But as trial approached, the district court offered to adopt GR 2's proposed time line if GR 2 would vacate the property. On December 4, 2008, GR 2 was given the option of proceeding with the expedited time line on the unlawful detainer claim, or vacating the property by December 5, 2008, in exchange for postponing the entire matter for a few months while GR 2 conducted discovery related to its counterclaims. The court scheduled a conference for the afternoon of December 8, 2008, so that counsel for GR 2 could inform the court of its client's decision.

¶ 10 On the morning of the scheduled conference, Mr. Granados, acting without counsel, filed three documents with the district court. These documents, an "Order for Hearing to Show Cause," an "Order to Stay Proceedings," and a "Petition for Hearing to Show Cause, Stay of Proceedings, and for Declaratory Relief," were signed by Judge Clayton of the "First Federal District Court, Western Region." This court is neither a state court nor a federal court. Rather, it is a tribal court of the NATO Indian Nation. The documents asserted that Mr. Granados was a member of the tribe and that, pursuant to certain aspects of federal law, tribal courts have exclusive jurisdiction over matters involving tribe members. Based on this purported exclusive jurisdiction, the documents ordered the district court to stay the proceedings pending resolution of the matter in tribal court.

¶ 11 The district court held a hearing the next day. To be sure that Mr. Granados would appear, the district court judge instructed counsel for GR 2 to inform Mr. Granados of the nature of the hearing and

the possibility of sanctions. Mr. Granados appeared at the hearing and addressed the court regarding his motives for filing the NATO Nation documents. The judge found that "there[ ] [was] no reasonable basis to believe that [the] documents [were] anything other than frivolous," and that the "only reason" they were submitted to the district court "was to delay [the] proceedings." Based on that finding, the district court struck the defendant's answer and counterclaim, and entered default judgment against the defendant. The district court also entered an order of restitution. Pursuant to the order of restitution, GR 2 vacated the subject property over the course of the next week.

¶ 12 The district court's judgment deemed DFI to be the owner of the Utah property and incorporated the order of restitution. The judgment also stated that it "may be supplemented, upon the presentation of appropriate evidence, by an award of [treble] damages to Plaintiff resulting from Defendants' unlawful detainer." Finally, the judgment contained a provision permitting the judgment to "be supplemented, upon the filing of an affidavit by counsel for Plaintiff, in an amount equal to the reasonable attorney fees incurred by Plaintiff."

¶ 13 GR 2 unsuccessfully moved to stay execution of the judgment and to have the judgment set aside. After these unsuccessful motions, GR 2 appealed. GR 2 challenges the district court's judgment for a number of reasons. First, GR 2 claims that rule 11 does not permit a court to sanction an LLC because of the actions that one of its members takes, where those actions were taken without the assistance of counsel. Second, GR 2 argues that its due process rights were violated because the rule 11 hearing was conducted without entry of an order to show cause and because GR 2 was not given a reasonable opportunity to respond to the rule 11 allegations. Third, GR 2 argues that rule 11 imposes specific procedural requirements, such as entry of an order describing the violating conduct and explaining the basis for the sanction imposed. GR 2 asserts that, because the district court failed to conform to rule 11's procedural requirements, the sanctions imposed under rule 11 must be reversed. Fourth, GR 2 claims that its conduct should not have been sanctioned under rule 11 because the legal issues raised in the NATO Nation filings are unsettled questions of law. Fifth, GR 2 argues that, even if sanctions were appropriate, default judgment was an inappropriate sanction, either because Utah rule 11 does not permit default judgment as a sanction or because default judgment is too harsh a sanction to be imposed in this case.

¶ 14 We are unable to examine any of the arguments made by GR 2. As discussed below, the district court's judgment contains two provisions that, by their own terms, require further action by the district court. Thus, the judgment is, on its face, nonfinal. Therefore, we lack jurisdiction to consider the questions presented on appeal and are obligated to dismiss the appeal and remand the case to the district court.

## STANDARD OF REVIEW

¶ 15 "Whether a district court's judgment is final is a question of law." [1] Accordingly, the question of finality may appropriately be addressed by this court on appeal, even if the question is being addressed for the first time.[2]

## ANALYSIS

¶ 16 The district court judgment from which GR 2 attempts to appeal is nonfinal because, by its own terms, it requires supplementation before finally resolving the dispute between the parties. Utah Rule of Appellate Procedure 3(a) permits a party to appeal only "final orders and judgments." [3] Accord-

---

1. *Anderson v. Wilshire Invs., LLC,* 2005 UT 59, ¶ 7, 123 P.3d 393.

2. *See Irvin v. State (State ex rel. S.M.),* 2006 UT 75, ¶ 6, 154 P.3d 787 ("This court makes the original determination of whether an order is final and appealable.").

3. Utah R.App. P. 3(a); *Loffredo v. Holt,* 2001 UT 97, ¶ 10, 37 P.3d 1070 ("This court does not have jurisdiction over an appeal unless it is taken from a final judgment, or qualifies for an exception to the final judgment rule." (citation omitted)).

We have acknowledged three exceptions to the final judgment rule. These exceptions are for

ingly, "an appellate court lacks jurisdiction over an appeal that is not taken from a final order or judgment."[4] In such circumstances, we must "refuse to decide [those] cases not properly before [us]."[5]

■ ¶ 17 A judgment is not final even where it fully resolves issues advanced by one party,[6] or even where it resolves a majority of the issues advanced by both parties.[7] Rather, a judgment is final only if it " 'dispose[s] of the case as *to all the parties*, and finally dispose[s] of the subject-matter of the litigation on the merits of the case.' "[8] Put more succinctly, a judgment is final only if it "ends the controversy between the parties litigant."[9]

¶ 18 In a number of our cases considering the finality of judgments, we have articulated the reasons underlying this rule.[10] For instance, with regard to attorney fees, we have stated that permitting " 'piecemeal appeals' " would place an unmanageable strain on the judicial system, because every case involving attorney fees could potentially be the genesis of two separate appeals—one appeal related to the merits and one appeal related to the attorney fees award.[11] Further, the amount of an attorney fees award may be a determinative factor in whether a party decides to appeal at all.[12] That is, until a party knows the amount of attorney fees, that party cannot make an informed decision about the potential costs and benefits associated with taking an appeal.[13] With regard to finality, when a court resolves some claims on summary judgment while leaving counterclaims unresolved, we have noted that our final judgment rule maintains the proper relationship between courts. That is, since rule 54 of the Utah Rules of Civil Procedure permits trial courts to modify their decisions at any time prior to final judgment, an appeal from such a judgment could lead to trial and appellate courts entering conflicting orders with regard to the same case at the same time.[14] We have observed that "our judicial system would not work well if the trial court could revise an order or judgment after the parties had appealed it to our court."[15] Although the reasoning we cite here referred to final judgments in the context of attorney fees awards and grants of summary judgment, these reasons are equally applicable to unresolved issues surrounding damage awards.

■ ¶ 19 As our prior cases make clear, dismissal of the appeal now before us is necessary because the district court's judgment fails to establish the amount of the awards of attorney fees and treble damages. A straightforward application of our general rule leads inescapably to the conclusion that the judgment in this case is not final. By statute, a party who successfully brings an unlawful detainer action is entitled to attor-

appeals from interlocutory orders, *see* Utah R.App. P. 5, appeals from judgments certified as final under Utah Rule of Civil Procedure 54(b), *see A.J. Mackay Co. v. Okland Constr. Co.*, 817 P.2d 323, 325 (Utah 1991), and appeals expressly permitted by statute, *see Bradbury v. Valencia*, 2000 UT 50, ¶ 12, 5 P.3d 649. None of these exceptions apply to this case.

4. *Anderson v. Wilshire Invs., LLC*, 2005 UT 59, ¶ 9, 123 P.3d 393 (citing Utah R.App. P. 3(a)).

5. *Kennedy v. New Era Indus.*, 600 P.2d 534, 534–35 (Utah 1979); *see also Bradbury*, 2000 UT 50, ¶ 8, 5 P.3d 649 ("Where an appeal is not properly taken, this court lacks jurisdiction and we must dismiss.").

6. *See A.J. Mackay Co.*, 817 P.2d at 324–25 (party not permitted to appeal from grant of summary judgment against it where the opposing party's counterclaims had not been resolved).

7. *See Loffredo*, 2001 UT 97, ¶ 14, 37 P.3d 1070.

8. *Kennedy*, 600 P.2d at 535–36 (quoting *Shurtz v. Thorley*, 90 Utah 381, 61 P.2d 1262, 1264 (1936)).

9. *Id.* at 536.

10. *See, e.g., Irvin v. State (State ex rel. S.M.)*, 2006 UT 75, ¶ 7, 154 P.3d 787; *Loffredo*, 2001 UT 97, ¶ 13, 37 P.3d 1070; *ProMax Dev. Corp. v. Raile*, 2000 UT 4, ¶ 15, 998 P.2d 254.

11. *See ProMax*, 2000 UT 4, ¶ 14, 998 P.2d 254 (quoting *Meadowbrook, LLC v. Flower*, 959 P.2d 115, 118 (Utah 1998)).

12. *See id.*

13. *See id.*

14. *See Bradbury*, 2000 UT 50, ¶ 10 n. 4, 5 P.3d 649.

15. *Id.*

ney fees and to compensation, in the form of treble damages, for any damage to the property caused by the defendant during the period of unlawful possession.[16] The judgment from which GR 2 attempts to appeal explicitly reserves determination of these issues. It calls for supplementation of the record, in the form of affidavits and appropriate evidence, for the purpose of determining the amounts of these awards. On its face, the judgment permits no doubt that the issues central to the unlawful detainer action have not been resolved. Thus, the subject matter of this litigation has not been disposed of, and the controversy between these parties remains quite live.[17]

¶ 20 This case represents another in the line of cases where we have held that a judgment awarding attorney fees in a yet-to-be-determined amount is not final for purposes of appeal.[18] Because we lack jurisdiction over appeals from such judgments, this court lacks the power to resolve the issues presented to us.

¶ 21 We are keenly aware of the consequences that will flow from this determination. For GR 2, the consequences are harsh. As this case comes to us, Mr. and Mrs. Granados have vacated a home that they contend rightfully belongs to them. They have done so because the trial court, sua sponte, concluded that the appropriate means of addressing the actions of a layperson—a layperson who was not technically a party to the action and who had not technically appeared before the court—was to sanction the defendant corporation owned, in part, by the layperson. The court pursued these sanctions even though it knew the actions of the layperson were unknown to counsel for the defendant. And the sanctions chosen by the court were arguably the most severe sanctions that could have been imposed.

¶ 22 But even for DFI, the consequences are not minor. Should GR 2 choose to appeal again after the judgment of the district court reaches finality, DFI will be tasked with the time and expense of relitigating this appeal. Further, DFI presumably invoked the summary proceedings of the unlawful detainer action because it valued the swiftness and finality that would accompany that approach. Because of the district court's decision not to address the merits of the dispute, the validity of the unlawful detainer judgment in this case remains in question.

¶ 23 Even though we are cognizant of all of these consequences, we cannot fabricate the power to hear a case simply because it seems more palatable than acknowledging that we lack jurisdiction. As we have stated in the past, "[t]he lost time and effort occasioned by the briefing and oral argument in this case is a small price to pay for insisting that the parties comply with the rules of procedure so that the proper relationship between this Court and the trial courts may be main-

16. *See* Utah Code Ann. § 78B–6–811(3) (2008).

17. We also note that this case is distinguishable from *Anderson*, 2005 UT 59, ¶ 7, 123 P.3d 393. In that case, we held that a judgment was not rendered nonfinal by virtue of a provision that reserved a request for attorney fees "for consideration by the Court at a later date should [the] case continue." *Id.* ¶ 24. Although the language of that judgment suggested that the issue was unresolved, we held that the judgment was final because the district court in that case had considered a request for attorney fees and rejected it. *Id.* ¶¶ 27–28. The suggestion, in the judgment, that the issue could be reconsidered stemmed from the fact that the court anticipated that the nonprevailing party would bring additional claims. *Id.* ¶ 5. Instead, the nonprevailing party appealed, and no claim that would require the district court to reconsider whether to award attorney fees was ever raised. *Id.*

We held that where an award of attorney fees had been clearly denied and where reconsideration of the issue was "contingent upon the occurrence of an uncertain event," the reservation of the issue was "insufficient to leave the attorney fees issue pending." *Id.* ¶¶ 27–28. Put differently, the attorney fees issue did not render the judgment nonfinal because it had been fully resolved as it related to all components of the judgment in that case.

In this case, the attorney fees and treble damages issues have most certainly not been fully resolved as they relate to all components of the judgment. It is settled that DFI will receive these awards, but valuation remains pending. Unlike the award of fees in *Anderson*, the awards to DFI in this case are not contingent upon the occurrence of an uncertain event. And although they have been granted, they are also still pending because their value has not been established.

18. *See, e.g., Irvin*, 2006 UT 75, ¶ 7, 154 P.3d 787; *Loffredo*, 2001 UT 97, ¶ 13, 37 P.3d 1070; *Pro-Max*, 2000 UT 4, ¶ 15, 998 P.2d 254.

tained." [19]  Accordingly, as is incumbent upon us when we find that we lack the jurisdiction to hear a case, we dismiss this appeal.

## CONCLUSION

¶ 24 We find that we lack jurisdiction to resolve this appeal.  We have no jurisdiction over appeals from judgments that are not final, and the judgment appealed from in this case is not final because it awards attorney fees and treble damages to the prevailing party but fails to specify the amount of those awards.  The appeal is dismissed.

¶ 25 Chief Justice DURHAM, Justice PARRISH, Justice NEHRING, and Judge IWASAKI concur in Associate Chief Justice DURRANT'S opinion.

¶ 26 Justice WILKINS does not participate herein;  District Judge GLENN K. IWASAKI sat.

19.  *Kennedy,* 600 P.2d at 537.