Stanley L. WADE, Plaintiff and Appellant,

v.

F.C. STANGL, III, Defendant and Appellee.

No. 920221–CA.

Court of Appeals of Utah.

Feb. 7, 1994.

James I. Watts (argued), Salt Lake City for appellant.

Daniel A. Jensen (argued), Kimball, Parr, Waddoups, Brown & Gee and Stephen G. Crockett, Giauque, Crockett & Bendinger, Salt Lake City, for appellee.

Before BENCH and GREENWOOD, JJ., and REGNAL W. GARFF,[1] Senior Judge.

BENCH, Judge:

Stanley L. Wade appeals the trial court's decision allocating property taxes on commercial property he purchased from F.C. Stangl. We affirm.

### FACTS

In May 1978, Wade and Stangl entered into an installment land contract (Contract) whereby Wade agreed to purchase from Stangl 6.87 acres of property for $206,100 to be paid in seventy-nine equal monthly installments. The 6.87 acres purchased by Wade were part of a larger 9.63–acre tract of land owned by Stangl. Under the Contract, Stangl retained ownership of the remaining 2.76 acres. Wade paid the last monthly installment on the Contract in 1985.

The Contract specified that property taxes for 1978 were to be "prorated at the closing" and that "the parties shall prorate all taxes and assessments relating to the Property in accordance with the latest tax and assessment bills." The Contract did not specify how the property tax liability was to be allocated during the seven-year executory period following 1978.

During the executory period, since title had not passed to Wade, the property was assessed for tax purposes as if it were a single tract. From 1979 through 1981 Stangl charged Wade 71.34% of the total tax obligation based on the proportionate amount of land they each owned. Wade paid the taxes under this arrangement until 1982. From 1982 through 1991, Wade refused to pay any property taxes. In order to avoid loss of the property through a tax sale, Stangl paid the entire property tax assessed against the property during this period.

In 1987, Wade initiated an action to compel Stangl to convey the property to him. Stangl counterclaimed, arguing that Wade should be required to pay his share of the property taxes before any conveyance was required. In February 1989, the trial court entered summary judgment in favor of Stangl. Wade appealed from the trial court's grant of summary judgment, and in October 1989, the supreme court concluded that there were material facts in dispute and reversed the summary judgment. The supreme court remanded the case to the trial court for a determination of the amount of taxes assessed since 1978 that were attributable to Wade.

On remand, Wade urged that his share of the taxes should be based upon the actual value of his land. Stangl, on the other hand,

1. Senior Judge Regnal W. Garff, acting pursuant to appointment under Utah Code Ann. § 78–3–24(10) (1992).

claimed that the taxes should be apportioned based on the amount of acreage of the respective parcels of land.

The trial court concluded that the Contract between the parties was ambiguous as to the allocation of property taxes. The trial court therefore took extrinsic evidence in order to determine the intent of the parties under the Contract. The trial court found, based on evidence of a 1980 oral agreement and a pretrial stipulation between the parties, that they had intended to split the tax liability of the entire parcel of land according to the proportionate amount of land each party owned. The trial court also found that the parties agreed to this arrangement because it "would result in lower taxes for each party than would be the case if the two parcels were segregated and separately assessed and taxed."

The trial court ordered that beginning with the 1991 tax year, the properties would be taxed separately and each party would be individually liable for payment of the taxes assessed against his individual parcel. However, the trial court held that Wade was liable to Stangl for Wade's portion of the property taxes assessed against the whole parcel from 1982 through 1991. The amount of taxes owed by Wade, together with prejudgment interest, was stipulated by the parties to be $74,652. The court also awarded Stangl postjudgment interest, attorney fees, and costs for a total award of $100,699.90. The court further stated that upon full satisfaction of the judgment against Wade, Stangl shall be obligated to convey to Wade the property as set forth in the Contract. Judgment was entered in November 1991, and this appeal followed.

## ISSUES

Wade raises the following issues on appeal: (1) whether the trial judge was biased against Wade to an extent that prevented him from receiving a fair trial; and (2) whether the trial court erred by admitting certain extrinsic evidence to determine the intent of the parties under the Contract.

2. Wade suggests on appeal that while he is obligated to pay taxes on the property prior to 1985,

## ANALYSIS

### Judicial Bias

■ Wade argues that the trial judge became antagonistic toward him because of the actions of his prior counsel. Wade also claims that the trial judge made several rulings that were contrary to controlling law. As a result, Wade asserts that the trial judge was biased against him and prevented him from receiving a fair trial.

Wade did not, however, raise the issue of bias or prejudice in the trial court. "We are governed by the general principle that matters not put in issue before the trial court may not be raised for the first time on appeal." *Sukin v. Sukin,* 842 P.2d 922, 926 (Utah App.1992) (citing *James v. Preston,* 746 P.2d 799, 801 (Utah App.1987)). This principle also applies where the bias or prejudice of a trial judge is alleged for the first time on appeal. *Id.* Rule 63(b) of the Utah Rules of Civil Procedure provides:

Whenever a party to any action or proceeding, civil or criminal, or his attorney shall make and file an affidavit that the judge before whom such action or proceeding is to be tried or heard has a bias or prejudice, either against such party or his attorney or in favor of any opposite party to the suit, such judge shall proceed no further therein, except to call in another judge to hear and determine the matter.

This rule requires that a party alleging judicial bias or prejudice must first file an affidavit to that effect in the trial court. *Sukin,* 842 P.2d at 926. We will not, therefore, consider the issue of judicial bias or prejudice when it is raised, as in the present case, for the first time on appeal.

### Extrinsic Evidence

Wade argues that the trial court committed prejudicial error by relying on testimony of an oral agreement and exhibits attached to a pretrial stipulation in determining that the parties intended to allocate the property tax assessments based on the relative amount of property owned by each party.[2]

Stangl's failure to convey the property to him after he paid the purchase price eliminated

The trial court concluded that the Contract executed by the parties in 1978 was ambiguous with respect to the allocation of property taxes beyond 1978.[3] Whether the terms of a contract are ambiguous is a question of law which we review for correctness. *Anesthesiologists Assoc. v. St. Benedict's Hosp.*, 852 P.2d 1030, 1035 (Utah App.1993), *cert. granted*, 860 P.2d 943 (Utah 1993). "In order to interpret a contract, we first look to the four corners of the document to determine the intent of the parties." *Id.* (citing *Ron Case Roofing & Asphalt Paving, Inc. v. Blomquist*, 773 P.2d 1382, 1385 (Utah 1989)). "Contract language may be ambiguous if it is unclear, omits terms, or if the terms used to express the intention of the parties may be understood to have two or more plausible meanings." *Village Inn Apartments v. State Farm Fire & Casualty Co.*, 790 P.2d 581, 583 (Utah App.1990) (citations omitted).

In the present case, the Contract does not specify how property taxes were to be assessed after 1978. As a result, the parties' intent with respect to the allocation of property taxes subsequent to 1978 cannot be ascertained from the Contract. Therefore, the trial court was correct, as a matter of law, in ruling that the Contract was ambiguous in that it did not indicate how the parties intended to allocate property taxes after 1978. *See id.* at 583 (contract ambiguous if terms omitted); *HCA Health Serv. v. St. Mark's Charities*, 846 P.2d 476, 484 (Utah App.1993) (contract ambiguous if incompletely expressing parties' agreement).

If a contract is ambiguous, extrinsic evidence may be introduced to clarify the parties' intent. *West Valley City v. Majestic Inv. Co.*, 818 P.2d 1311, 1313 (Utah App. 1991). "We review the trial court's construction based on extrinsic evidence under the more deferential clearly-erroneous standard." *Id.* "A party challenging the trial court's interpretation of ambiguous terms of a contract faces a substantial appellate burden. We affirm the trial court's findings if they are based on sufficient evidence, viewing the evidence in the light most favorable to the trial court's construction." *Id.* In order to successfully challenge the trial court's findings of fact, "[a]n appellant must marshal the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)). "If the appellant fails to marshal the evidence, the appellate court assumes that the record supports the findings of the trial court." *Saunders v. Sharp*, 806 P.2d 198, 199 (Utah 1991).

In the present case, the trial court relied on extrinsic evidence of an oral agreement between the parties and exhibits attached to a stipulation between the parties to adduce the intent of the parties with respect to the allocation of property taxes. The trial court found that the parties orally agreed in 1980 to split the tax liability for the consolidated tract of land according to the proportionate amount of land owned by each party. The trial court stated that this oral agreement prospectively resolved the issue of tax liability between the parties. Additionally, the trial court found that even if there was no oral agreement, the "documents in Exhibit P of the Stipulation reflect the parties' intent at the time of execution of the written agreement and thereafter that the taxes be apportioned based on the respective amount of land owned by each party."[4] The trial court further found that "[u]nder either of these

---

Wade's obligation to pay taxes on the property under the doctrine of equitable conversion. However, as correctly pointed out by Stangl, Wade did not raise this issue at trial. We may not, therefore, address this issue for the first time on appeal. *Sukin v. Sukin*, 842 P.2d 922, 926 (Utah App.1992).

3. The parties essentially concede that the Contract was ambiguous in that it did not specify how property taxes were to be allocated after 1978.

4. The exhibit referred to by the court contains several letters that Stangl wrote to Wade, detailing the allocation of property tax based on the amount of property owned. It also contains a cancelled check issued by Wade to Stangl for the 1980 property tax.

alternative findings, the parties conclusively agreed that the property taxes would be allocated according to the amount of land owned by each party."

■ Wade argues that the introduction of evidence regarding an oral agreement violated the statute of frauds and the statute of limitations. There is some question as to whether Wade properly objected to the introduction of this evidence at trial, thus preserving the issue for appeal. Even without the evidence of the oral agreement, however, the trial court's finding is supported by the exhibit. Wade argues that the exhibit cannot support the trial court's finding; however, he has failed to properly challenge this finding. *Bartell*, 776 P.2d at 886. In any event, there is additional evidence in the record that supports the trial court's finding. The trial court considered the fact that for four years Wade had paid property taxes according to the amount of land he owned. The trial court also considered the fact that the parties had apportioned property taxes in a similar manner in a previous transaction. Therefore, even without the evidence regarding the oral agreement between the parties, the trial court's finding that the parties intended to allocate property taxes according to the amount of land they each owned is not clearly erroneous.[5]

### Attorney Fees and Costs on Appeal

■ Stangl argues that he is entitled to attorney fees and costs on appeal if he pre-

vails. We agree. At trial, Stangl was awarded attorney fees and costs under the Contract. A party who was awarded attorney fees and costs at trial is also entitled to attorney fees and costs if that party prevails on appeal. *See Brown v. Richards*, 840 P.2d 143, 156 (Utah App.1992), *cert. denied*, 853 P.2d 897 (Utah 1993).

### CONCLUSION

We will not address issues of judicial bias or prejudice that are raised for the first time on appeal. The trial court's finding that the parties intended to be taxed according to the amount of land each owned was supported by sufficient evidence and is therefore not clearly erroneous.

We affirm the judgment of the trial court, and remand the case for an award to Stangl of reasonable attorney fees and costs incurred on appeal.

GREENWOOD, J., and REGNAL W. GARFF, Senior Judge, concur.

---

5. Wade also argues that the trial court failed to allocate the taxes according to the value of the individual parcels of land under the doctrine of equitable conversion, as instructed by the supreme court on remand. In reviewing the supreme court's instructions on remand, we see no

requirement that the trial court must determine property taxes under the doctrine of equitable conversion. In any event, Wade failed to raise the argument below. We may not therefore address this argument for the first time on appeal. *Sukin*, 842 P.2d at 926.