2002 UT App 375

**Roger OLIPHANT, Plaintiff
and Appellee,**

v.

**ESTATE of Joseph R. BRUNETTI and its
heirs and assigns; and Florence Brunet-
ti, Defendants and Appellants.**

**No. 20010238–CA.**

Court of Appeals of Utah.

Nov. 15, 2002.

Rehearing Denied Jan. 10, 2003.

Brian W. Steffensen and William J. Middleton, Salt Lake City, for Appellants.

Lee Rudd, Draper, for Appellee.

Before Judges BENCH, ORME, and THORNE, Jr.

## OPINION

ORME, Judge.

¶ 1 This appeal challenges the propriety of an independent action in which relief was granted from a default judgment that had been purportedly satisfied through payment of the underlying obligation. Especially given the coordination between the judge who entered the default judgment and the judge who decided the independent action, we affirm.

## BACKGROUND

¶ 2 Roger Oliphant had several financial dealings with Joseph and Florence Brunetti in the 1980s and 1990s. Their respective views of the transactions ultimately varied quite dramatically. Oliphant believed that (1) he was paid $5,000 by the Brunettis as a finder's fee in connection with a loan they made to Heinz Rose; (2) he had no responsibility for repayment of the Rose loan; and (3) he owed the Brunettis something by reason of a failed business dealing in the purchase and sale of coins, but the amount owed should be "net" of the value of coins the Brunettis retained after the venture failed.

¶ 3 The Brunettis' position, as reflected in a complaint they filed in May of 1995, was that (1) they had loaned $5,000 to Oliphant which had not been repaid; (2) Oliphant was liable for repayment of $50,000 loaned to Rose on Oliphant's advice; and (3) Oliphant was liable for repayment of the full $19,000 that the Brunettis had invested in the coin business. After Oliphant answered the complaint, Oliphant and the Brunettis agreed that Oliphant would make periodic cash payments to the Brunettis. Oliphant made a number of payments, and the 1995 complaint was eventually dismissed.

¶ 4 In October of 1997, an identical complaint was filed by the Brunettis against Oliphant. Oliphant claims he never received this complaint, but a return of service in the file says otherwise. A default judgment was taken against him a few months later. Oliphant also claims he never received the notice of entry of default judgment that was sent to him, and the certificate of mailing does reflect that an incorrect zip code was used. Notwithstanding the default judgment, according to a ledger sheet Oliphant maintained, Oliphant continued to make—and the Brunettis continued to receive and accept—periodic payments pursuant to the prior arrangement. Oliphant claims he first learned of the default judgment when he was served with a writ of execution on April 20, 2000, by which time Joseph Brunetti had died.

¶ 5 On April 27, 2000, Oliphant paid $6,400 to Florence Brunetti. She acknowledged receipt of the payment and its intended legal effect by signing a document, prepared by Oliphant, which provided, in its entirety, as follows:

> Joseph and Florence Brunetti along with Roger A. Oliphant agreed to settle all claims in the amount of $24,000.00 paid by Roger A. Oliphant to Joseph & Florence Brunetti.
>
> Amount of monies paid to Joseph and Florence Brunetti through December 31, 1999[i]s $17,600.00. Balance owing is $6,400.00.
>
> Monies received by Florence Brunetti on April 27, [20]00 from Roger A. Oliphant is $6,400.00[.]
>
> With final payment of $6,400.00, bringing total payments of $24,000.00 without interest PAID IN FULL. Joseph and Florence Brunetti and successors have settled, released and resolved all claims, suits, judgements, etc. against Roger A. Oliphant, including Civil nos 893003687 and 970907433, Third District Court.

Apparently at the same time, Florence signed her name at the bottom of a copy of Oliphant's ledger sheet, which showed prior payments totalling $17,600, a final payment of $6,400, and a zero balance.

¶ 6 On June 1, 2000, in the face of execution on the default judgment, Oliphant filed an action against the Brunettis seeking relief from the default judgment. That action was assigned to Judge Bohling. Later that month, Judge Noel, who had entered the default judgment, stayed execution of the judgment pending disposition of the action assigned to Judge Bohling. In that action, the Brunettis filed a motion to dismiss or for summary judgment. Oliphant filed a motion for summary judgment. The court concluded the obligations underlying the default judgment had been discharged, and the judgment thereby satisfied, through an accord and satisfaction. Accordingly, the court granted Oliphant's motion and denied the Brunettis' motions. The Brunettis appeal.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 Multiple issues are raised. We believe the issues meriting discussion boil down to these three.[1] First, did Judge Bohling have the authority to consider Oliphant's challenge to the default judgment in the 1997 action entered by Judge Noel? Questions of the scope of judicial authority are reviewed for correctness. *Cf. Beaver County v. Qwest, Inc.*, 2001 UT 81,¶ 8, 31 P.3d 1147 (subject matter jurisdiction); *State v. Wanosik*, 2001 UT App 241,¶ 8, 31 P.3d 615 (authority to impose sentence in absentia), *cert. granted*, 42 P.3d 951 (Utah 2002).

¶ 8 Second, if Judge Bohling had such authority, was he limited to treating the action as tantamount to a motion for relief from judgment under rule 60(b) of the Utah Rules of Civil Procedure? "[T]he interpretation of a rule of procedure is a question of law that we review for correctness." *Brown v. Glover*, 2000 UT 89,¶ 15, 16 P.3d 540.

¶ 9 Third, if Judge Bohling was not constrained by rule 60(b), was summary judgment properly entered on a theory of accord and satisfaction? Whether summary judgment was properly entered on the record before Judge Bohling and whether an accord and satisfaction were established on that record are also questions of law, which we review for correctness. *See Gerbich v. Numed Inc.*, 1999 UT 37,¶ 10, 977 P.2d 1205 (summary judgment); *ProMax Dev. Corp. v. Raile*, 2000 UT 4,¶ 17, 998 P.2d 254 (accord and satisfaction).

## ANALYSIS

¶ 10 The thrust of the Brunettis' argument, perhaps well-taken as far as it goes, is that any consideration of the viability of the judgment entered in the 1997 action should have been undertaken by Judge Noel, who entered the judgment, rather than Judge Bohling. We need not decide whether, in all circumstances, a judge would have the power to consider, in an independent action, the continued vitality of a judgment entered by another judge. Largely overlooked by the Brunettis is that Judge Noel was apprised of the independent action and had the opportunity to require that the parties raise with him any challenge to his judgment, either by moving to consolidate the independent action with the 1997 action or by filing an appropriate post-judgment motion in the 1997 action. Instead, fully cognizant of the independent action, Judge Noel stayed execution of his judgment pending resolution of the independent action. In essence, then, Judge Noel deferred to Judge Bohling to resolve the challenge to Judge Noel's judgment and, in the process, obviated the range of problems presented by having a different judge second-guessing the judgment entered by a colleague. This knowledge and coordination between the two judges makes the Brunettis' first argument something of a red herring,[2] and we turn our attention to the remaining two issues.

---

1. The Brunettis raise a trust document for the first time on appeal, arguing the trust should have been named as a defendant rather than the estate of Joseph Brunetti. We will not consider matters raised for the first time on appeal. *See*

*Wade v. Stangl*, 869 P.2d 9, 11 (Utah Ct.App. 1994).

2. Moreover, the argument is not adequately briefed and fails on that basis as well. *See Smith*

## I. Effect of Rule 60(b)

■ ¶ 11 The thrust of the Brunettis' argument is that by bringing an independent action, Oliphant avoided his burden to demonstrate that the default judgment was a result of "excusable neglect." Utah R. Civ. P. 60(b)(1). And insofar as Oliphant's claim was premised on fraud or misconduct under Utah R. Civ. P. 60(b)(3), the Brunettis contend Oliphant's action was untimely. *See id.* 60(b) ("The motion shall be made within a reasonable time and for reasons (1), (2), or (3), not more than 3 months after the judgment, order, or proceeding was entered or taken.").

¶ 12 We are not persuaded. Even if Oliphant was bound to proceed under rule 60(b)—a doubtful proposition in view of the rule's explicit recognition, with our emphasis, that "[t]he procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules *or by an independent action*"—Oliphant's theory should not be viewed as confined to subparts (1) and (3) of rule 60(b). Rather, the thrust of his argument brings him comfortably within subpart (5), entitling a party to relief if "the judgment has been satisfied, released, or discharged ... or it is no longer equitable that the judgment should have prospective application." Utah R. Civ. P. 60(b)(5). Such a claim only has to be raised "within a reasonable time," *id.* 60(b), and the independent action was brought almost immediately after renewed execution efforts seemingly precluded by the parties' settlement. Accordingly, we now turn to consider whether, on the merits, Oliphant was entitled to the relief he was granted.

## II. Merits

■ ¶ 13 Judge Bohling concluded Oliphant was entitled to relief from the default judgment because the underlying dispute had been resolved pursuant to "a valid accord and satisfaction." In reaching that result, he concluded that the document signed by Florence Brunetti was "clear and unambiguous on its face."

■ ¶ 14 These conclusions appear to be sound. "Whether the terms of a contract are ambiguous is a question of law which we review for correctness." *Wade v. Stangl,* 869 P.2d 9, 12 (Utah Ct.App.1994). "Contract language may be ambiguous if it is unclear, omits terms, or if the terms used to express the intention of the parties may be understood to have two or more plausible meanings." *Village Inn Apartments v. State Farm Fire & Cas. Co.,* 790 P.2d 581, 583 (Utah Ct.App.1990) (citation omitted). Absent ambiguity, interpretation of a contract presents a question of law rather than a question of fact, and it is undertaken without resort to extrinsic evidence of the parties' intentions. *See Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985); *Seashores Inc. v. Hancey,* 738 P.2d 645, 647 (Utah Ct.App. 1987). Only "[i]f a contract is ambiguous [may] extrinsic evidence ... be introduced to clarify the parties' intent." *Stangl,* 869 P.2d at 12.

¶ 15 We see in the succinct document signed by Florence Brunetti nothing that is "unclear, omits terms, or ... may be understood to have two or more plausible meanings." *Village Inn,* 790 P.2d at 583 (citation omitted). On the contrary, it is plain from the face of the document that the parties had a dispute; that they agreed to settle all claims for $24,000; that Oliphant had paid about three-fourths of that amount by 1999; that he paid the balance on April 27, 2000; that with the last payment, Oliphant had "PAID IN FULL"; and that with the last payment having been made, all of the parties' "claims, suits, [and] judgements" had been

*v. Smith,* 1999 UT App 370, ¶ 8, 995 P.2d 14 ("An issue is inadequately briefed when 'the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court.' ") (citation omitted), *cert. denied,* 4 P.3d 1289 (Utah 2000). The Brunettis' argument, limited to a single page in their brief, merely asserts in conclusory fashion: "Judge Noel had jurisdiction over [the prior] case, and had the sole power and jurisdiction to entertain a claim that the judgment debt was satisfied." The contention is alternatively stated: "Oliphant had to bring his satisfaction of judgment claim before Judge Noel, not before Judge Bohling in an entirely different case." Although passing reference is made to rules 60(b) and 58B of the Utah Rules of Civil Procedure, no authority is cited in support of the quoted contentions, and they are not to be found in rules 60(b) and 58B.

"settled, released and resolved," including, specifically, the 1997 action in which the default judgment had been taken.

▆▆ ¶ 16 "To establish an accord and satisfaction, three elements must be present: '(1) an unliquidated claim or a bona fide dispute over the amount due; (2) a payment offered as full settlement of the entire dispute; and (3) an acceptance of the payment as full settlement of the dispute.'" *Dishinger v. Potter*, 2001 UT App 209,¶ 19, 47 P.3d 76 (quoting *ProMax Dev. Corp. v. Raile*, 2000 UT 4,¶ 20, 998 P.2d 254), *cert. denied*, 40 P.3d 1135 (Utah 2001). These elements are clearly satisfied in this case, largely with reference only to the document signed by Florence Brunetti.

▆▆ ¶ 17 On appeal, the Brunettis insist that at the time the final payment was tendered and accepted, there was no unliquidated claim or bona fide dispute. Rather, they contend, the default judgment served to liquidate the claim and resolve the parties' dispute. Thus, the payment tendered on April 27 must be regarded merely as a partial payment toward the judgment.

¶ 18 This theory fails to take into account certain critical facts and thus is unavailing. First, as the ledger sheet signed by Florence Brunetti demonstrates, the basic settlement accord reached by the parties, and many of the payments made thereon, predated the default judgment, while a substantial portion of the payments were made after the judgment was entered. The complaint commencing the 1997 action did not recognize the accord or the payments made pursuant thereto and, thus, did not serve to liquidate the then-amount of the claim. Indeed, the disputed default judgment was a component of the parties' ongoing dispute rather than a means to resolve it.

¶ 19 Second, and more importantly, the document signed contemporaneously with the receipt of the final payment conclusively establishes how the amount was calculated, the purpose for which the payment was tendered, and the basis on which it was received. Any dispute about how this payment fits into the parties' course of dealing is resolved by the clear language of that docu-

ment. The Brunettis' theory is flawed because it sees significance only in the 1997 judgment and the tendered check; it essentially ignores the highly significant prior complaints, the ledger sheet, and the unambiguous document signed by Florence Brunetti.

▆▆ ¶ 20 In addition, the Brunettis argue there was no meeting of the minds reflected in the document signed by Florence. Her affidavit submitted below states she did not really know what she was signing. She understood she was only signing a receipt for that one payment and intended to do nothing beyond acknowledging that simple fact. Significantly, she does not, in her sworn affidavit, attribute this claimed confusion on her part to any misrepresentation or connivance on the part of Oliphant. Thus, any mistake about the meaning and effect of the document was entirely unilateral.

▆▆ ¶ 21 To prevail on a theory of unilateral mistake, "the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake." *John Call Eng'g, Inc. v. Manti City Corp.*, 743 P.2d 1205, 1209 (Utah 1987). As a matter of law, there was no such diligence here. The document is short and easy to understand. It does not use difficult or technical language. Lest the point be missed, "PAID IN FULL" appears in all capital letters. What was said in *John Call* applies with equal force in this case:

> Generally, one party to an agreement does not have a duty to ensure that the other party has a complete and accurate understanding of all terms embodied in a written contract. Rather, each party has the burden to read and understand the terms of a contract before he or she affixes his or her signature to it. A party may not sign a contract and thereafter assert ignorance or failure to read the contract as a defense.

*Id.* at 1207–08 (footnotes omitted).

▆▆ ¶ 22 Finally, the Brunettis contend the document signed by Florence Brunetti is not a fully integrated agreement and that parol evidence may properly be consid-

ered in ascertaining the true agreement of the parties, even if the evidence is at variance with the clear terms of the written agreement. We need not consider this contention, which is raised for the first time on appeal.[3] *See Wade v. Stangl,* 869 P.2d 9, 11 (Utah Ct.App.1994).

## CONCLUSION

¶ 23 Oliphant could, in an independent action, seek relief from the default judgment entered against him where the underlying indebtedness had been paid but execution on the judgment was undertaken nonetheless. Adjudication of the independent action could properly be undertaken by a judge other than the judge who entered the default judgment, at least where the first judge was made aware of the independent action and was amenable to its resolution by the second judge. The document signed by Florence Brunetti clearly and unambiguously memorialized an accord and satisfaction of the obligations claimed by the Brunettis, which were "PAID IN FULL" upon the final payment tendered by Oliphant.

¶ 24 Affirmed.

¶ 25 WE CONCUR: RUSSELL W. BENCH and WILLIAM A. THORNE JR., Judges.

---

**3.** In resisting Oliphant's motion for summary judgment, the Brunettis attacked the viability of Oliphant's accord and satisfaction theory, contending the amount owed was liquidated upon entry of the default judgment such that there was no consideration for the accord claimed by Oliphant. They also urged their "no meeting of the minds" theory. It is true that some portions of the affidavit filed below by Florence Brunetti might be relevant in a dispute over the applicability of the parol evidence rule. However, that theory was not articulated in the motions or memoranda filed by the Brunettis below. It is axiomatic that "[a] matter is sufficiently raised if it has been submitted to the trial court" for consideration and ruling. *James v. Preston,* 746 P.2d 799, 801 (Utah Ct.App.1987). "For an issue to be sufficiently raised, even if indirectly, it must at least be raised to a level of consciousness such that the trial judge can consider it." *Id.* at 802. That did not happen here.