2004 UT App 354

GARY PORTER CONSTRUCTION dba
Porter & Sons, Plaintiff, Appellee,
and Cross-appellant,

v.

FOX CONSTRUCTION, INC.; and National Surety Corp., Defendants, Appellants, and Cross-appellees.

No. 20030071–CA.

Court of Appeals of Utah.

Oct. 7, 2004.

Jeffery R. Price and Michael E. Bostwick, Salt Lake City, for Appellants.

Brian W. Steffensen, Salt Lake City, for Appellee.

## OPINION

BILLINGS, Presiding Judge:

¶1 Fox Construction, Inc. (Fox) appeals from a trial court order granting summary judgment to Gary Porter Construction (Porter.) We affirm. Porter appeals from a trial court order granting summary judgment and awarding attorney fees to National Surety Corporation (National.) We reverse in part and remand. The appeals have been consolidated.

## BACKGROUND

¶2 The University of Utah the (University) contracted with Fox for the construction of a Women's Gymnastics Training Facility (the Facility) on the University campus. As required by Utah Code section 63–56–38 and its contract with the University, Fox and its surety, National, issued a payment bond (the Bond) for the benefit of persons supplying labor and material for construction of the Facility. *See* Utah Code Ann. § 63–56–38 (1997).

¶3 Fox entered into a subcontract with Porter whereby Porter was to perform various excavation and soil placement services. Specifically, the subcontract required Porter to "furnish and install all materials, equipment and labor per plans, specification sections 02000, 02070, 02230, 02601, 02680, 02700 and 02721 and addendums 1 and 2" (Included Sections) for the sum of $146,740.00. Subsequently, Fox and Porter mutually agreed that section 02680 had been included by mistake, and as a result, Porter did no work specified in that section. After work on the

Facility had begun, Fox also asked Porter to perform additional work under sections 02300, 02665, and 02711 Excluded Sections, none of which were included in the subcontract or the bid.

¶ 4 When Porter invoiced Fox for its work, it identified the specific work done, the costs of the work by line item, and the particular section under which the work had been performed. At times, Fox verbally acknowledged that Porter was performing work outside the subcontract. Until sometime in early 1998, Fox paid for all work done by Porter, whether it fell under Excluded Sections or Included Sections. Thereafter, numerous disputes over payments arose between Fox and Porter. In short, Porter claimed that Fox owed it payments in addition to the $146,740.00 for work it had done under the (Excluded Sections,) and Fox claimed that because these sections had been mistakenly excluded from the subcontract when Fox had drafted it, Fox owed Porter no additional amounts. The last day Porter worked on the Facility was May 16, 1999.

¶ 5 Sometime in early spring of 1999, Porter verbally requested information on the Bond from Fox because it planned to file a lawsuit. On April 23, 1999, Porter sent a letter to the University requesting information on the Bond. The University forwarded the letter to Fox, but neither Fox nor the University provided Porter information on the Bond. In May 1999, Porter again verbally requested information on the Bond from Fox. Fox again did not provide the information to Porter.

¶ 6 Porter filed its complaint against Fox on March 16, 2000, alleging breach of contract, quantum meruit, and breach of the covenant of good faith and fair dealing. Porter did not make a claim upon the Bond at this time. In late June 2000, Fox provided Porter a copy of the Bond pursuant to a discovery request. Approximately six months later on January 12, 2001, Porter filed a motion to amend its complaint, which was unopposed and ultimately granted. On March 14, 2001, Porter filed its amended complaint naming National as a party and making a claim upon the Bond.

¶ 7 Porter moved for summary judgment on its claims against Fox. The trial court granted Porter's motion. Fox appeals.

¶ 8 National moved for summary judgment against Porter based upon its affirmative defense that the statute of limitations barred Porter's claim upon the Bond. The trial court granted National's motion after it concluded that (1) Porter had no legal justification for failing to name National and make a claim upon the Bond in its original complaint against Fox, which would have been timely; and (2) no identity of interest existed between National and Fox, and thus Porter's amended complaint did not relate back to its original complaint against Fox as required under rule 15(c) of the Utah Rules of Civil Procedure. The trial court then awarded attorney fees to National. Porter appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 9 First, Fox argues that the trial court erred by granting summary judgment to Porter after concluding that Fox had failed (1) to comply with rule 4–501(2)(B) of the Utah Rules of Judicial Administration [1] or (2) to create a material dispute with its additional facts. Second, Porter argues that the trial court erred by granting summary judgment to National after concluding that Porter's claims against National were barred by the applicable statute of limitations.

¶ 10 Motions for summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). When reviewing a grant of summary judgment, we view all facts and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and review the trial court's conclusions of law for correctness. *See Lovendahl v. Jordan Sch. Dist.*, 2002 UT 130, ¶ 13, 63 P.3d 705. However, "the trial court has discretion in requir-

---

1. On November 1, 2003, rule 4–501(2)(B) of the Utah Rules of Judicial Administration was repealed, and its procedural content was moved to rule 7(c)(3)(B) of the Utah Rules of Civil Procedure.

ing compliance with rule 4–501 [of the Utah Rules of Judicial Administration]." *Fennell v. Green*, 2003 UT App 291,¶ 9, 77 P.3d 339.

¶ 11 Porter also challenges the trial court's calculation of attorney fees awarded to National. "Calculation of reasonable attorney fees is in the sound discretion of the trial court, and will not be overturned in the absence of a showing of a clear abuse of discretion." *Dixie State Bank v. Bracken*, 764 P.2d 985, 988 (Utah 1988) (citation omitted).

## ANALYSIS

### I. Fox's Appeal

¶ 12 The trial court granted Porter's motion for summary judgment on two separate grounds. First, the trial court ruled that Fox had failed to comply with rule 4–501(2)(B) of the Utah Rules of Judicial Administration. Second, the trial court concluded that Fox had not created a material dispute with the additional facts it had submitted. We address each ground.

### A. Rule 4–501(2)(B)

¶ 13 When summary judgment papers were filed in this case, rule 4–501(2)(B) read as follows:

> The points and authorities in opposition to a motion for summary judgment shall begin with a section that contains a verbatim restatement of each of the movant's statement of facts as to which the party contends a genuine issue exists followed by a concise statement of material facts which support the party's contention. Each disputed fact shall be stated in separate numbered sentences and shall specifically refer to those portions of the record upon which the opposing party relies. All material facts set forth in the movant's statement and properly supported by an accurate reference to the record shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the opposing party's statement.

Utah R. Jud. Admin. 4–501(2)(B) (2002). Because Fox did not "begin with a section that contains a verbatim restatement of each of [Porter's] statement of facts ... followed by a concise statement of material facts which support [Fox's] contention [that a genuine issue of facts exists]," the trial court concluded that Fox had failed to comply with rule 4–501; for this reason, the trial court admitted "[a]ll the material facts set forth in [Porter's] statement" of undisputed facts. *Id.* Based upon this admission, the trial court ruled that there were no disputed issues of fact and that Fox was thereby entitled to summary judgment.

¶ 14 Two cases decided after the trial court's ruling support the trial court's conclusion that it had discretion to admit facts not "specifically controverted" in the manner outlined in rule 4–501(2)(B). In *Lovendahl v. Jordan Sch. District*, 2002 UT 130, 63 P.3d 705, the Utah Supreme Court ruled that the trial court had properly admitted the moving party's facts because these facts were not " 'specifically controverted by the opposing party's statement.' " *Id.* at ¶ 50 (quoting Utah R. Jud. Admin. 4–501(2)(B) (2002)). Similarly, in *Fennell v. Green*, 2003 UT App 291, 77 P.3d 339, this court held that the trial court had not "abused its discretion in requiring compliance with rule 4–501 and thus ruling that the facts, as stated in [the moving party's] motions and supporting memoranda, were deemed admitted." *Id.* at ¶ 9. Specifically, it was not an abuse of discretion for the trial court to admit all of the moving party's facts when the nonmoving party's opposition papers did "not refer to [the moving party's] statements of uncontroverted facts, but instead included only [its] own statement of undisputed facts ... [leaving] it unclear what facts ... were disputed." *Id.* at ¶ 7.

¶ 15 Both *Lovendahl* and *Fennell* support the conclusion that the trial court in this case did not abuse its discretion in enforcing rule 4–501(2)(B) by admitting Porter's facts as undisputed when Fox failed to comply with the rule. However, the Utah Supreme Court has since interpreted rule 4–501(2)(B), without mentioning these prior cases, in a somewhat more relaxed way. *See Salt Lake County v. Metro W. Ready Mix, Inc.*, 2004 UT 23,¶ 23 n. 4, 89 P.3d 155. As the court explained in *Metro West*, even where an

opposing memorandum [does] not set forth disputed facts listed in numbered sentences in a separate section as required [by the rule, as long as] the disputed facts [are] clearly provided in the body of the memorandum with applicable record references, ... failure to comply with the technical requirements of rule 4–501(2)(B) [is] harmless.

*Id.*[2] Because some of the facts Fox set forth in a separate section had appropriate record citations, which Fox asserts create disputed issues of material fact, under *Metro West* the trial court abused its discretion to enforce rule 4–501(2)(B) when it admitted Porter's undisputed facts because Fox failed to comply with rule 4–501. Thus, we must examine whether Fox's additional "facts are sufficient to preclude summary judgment in favor of [Porter]." *Id.*

### B. Fox's Additional Facts

■ ¶ 16 The trial court also concluded that the additional facts submitted by Fox do not create a material dispute. We agree.

■ ¶ 17 Porter argues that Fox owes additional compensation for work it did under the Excluded Sections based upon a contract implied in fact.[3] To succeed on this claim, Porter must show that (1) Fox requested Porter to perform the work under the Ex-

cluded Sections, (2) Porter expected additional compensation from Fox for the work, and (3) Fox knew or should have known that Porter expected additional compensation. *See Davies v. Olson,* 746 P.2d 264, 269 (Utah Ct.App.1987). The facts provided by Porter satisfy all of these elements and are not properly controverted by Fox.

¶ 18 In its moving papers, Porter set forth the following facts, with appropriate record citations: (1) Jeff Wood, Fox's project manager, drafted the subcontract which contains only the Included Sections; (2) Fox repeatedly asked Porter to perform work outside the subcontract under the Excluded Sections; (3) Porter performed all work identified in the subcontract as well as the requested work under the Excluded Sections; (4) for months, Fox reviewed and paid line-item bills from Porter which identified the work performed, the costs of the work, and the specific section under which the work was done; (5) at times, Fox acknowledged that Porter was performing work outside the subcontract; and (6) the total cost of the work performed by Porter was $296,750.00, and the amount Fox paid Porter was $135,441.62, leaving a balance of $161,309.08.

¶ 19 The additional facts submitted by Fox do not create a material dispute regarding

**2.** Although we are bound by the Utah Supreme Court's most recent interpretation of rule 4–501(2)(B), we respectfully note that the rule announced by the court leaves it unclear what remedies are available to trial courts for a party's failure to follow the procedure outlined in rule 4–501(2)(B). Rule 56(c) of the Utah Rules of Civil Procedure states that summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Id.* If compliance with former-rule 4–501(2)(B), the procedural content of which is currently in rule 7(c)(3)(B) of the Utah Rules of Civil Procedure, is anything other than a mere suggestion, then it seems that a trial court must have the discretion to grant summary judgment in instances where it would not otherwise be sanctioned by rule 56(c) alone. In other words, if failure to comply with the rule is "harmless" as long as a disputed fact can be gleaned from the opposition papers, then the rule would seem to add nothing to what rule 56 already requires.

While fashioning the proper remedy for failure to comply with rule 7(c)(3)(B) remains within the

trial court's discretion, *see Fennell v. Green,* 2003 UT App 291,¶ 9, 77 P.3d 339, it currently is unclear whether granting summary judgment, because facts are admitted as undisputed that otherwise would not have been, is ever within the trial court's discretion for failure to comply with the rule. For this reason, and because the rule announced in *Salt Lake County v. Metro West Ready Mix, Inc.,* 2004 UT 23,¶ 23 n. 4, 89 P.3d 155, was in a footnote with no reference to apparently conflicting prior case law, we ask the Utah Supreme Court to clarify the scope of remedies under rule 7(c)(3)(B) to guide trial courts. *See Johnson v. Department of Transp.,* 2004 UT App 284,¶ 7 n. 2 (concluding that facts stricken pursuant to rule 4–501 would not have created a material dispute even if the facts should have been considered under the test in *Metro West* ).

**3.** Porter also makes independent claims for breach of contract, breach of a contract implied at law, and breach of the covenant of good faith and fair dealing. However, because Porter's implied-in-fact contract claim is sufficient to affirm the trial court's ruling, we do not discuss these additional claims.

any of the three elements required for Porter's implied-in-fact contract claim. Fox does not dispute that it requested Porter to perform work under the Excluded Sections; and Fox provides no facts to dispute Porter's claim that Porter expected additional compensation for the work under the Excluded Sections. However, Fox does attempt to dispute the third element—whether Fox knew or should have known that Porter expected additional compensation.

¶ 20 Most of the facts Fox provides in its opposition papers come from the deposition testimony of Floyd Cox, the Vice President of Fox. However, much of Cox's testimony is inadmissible. Cox testifies about conversations between Wood and Gary Porter,[4] as well as positions taken by the University, regarding Porter's work under the Excluded Sections. This testimony is inadmissible hearsay, to which Porter objected in its reply memorandum and with a separate motion to strike, and therefore it cannot create a disputed issue of material fact. *See* Utah R. Civ. P. 56(e) (requiring that facts set forth be admissible to defeat summary judgment).

¶ 21 In the relevant admissible evidence remaining, Cox states that one Excluded Section, "section 2300[ ], had been left out of the subcontract;" and Wood states "that there was a section of specifications that was left out of the subcontract by mistake." Neither statement creates a material dispute over whether the Excluded Sections are part of the subcontract because they do not explain how the mistakes occurred despite ordinary diligence on the part of Fox. *See Oliphant v. Estate of Brunetti*, 2002 UT App 375,¶ 21, 64 P.3d 587 (explaining that to change the express terms of a contract due to unilateral mistake, "the mistake must have occurred notwithstanding the exercise of ordinary diligence by the party making the mistake" (quotations and citation omitted)). Also, because Fox presents no evidence that Porter should have known about Fox's mistake either when it entered into the subcontract or after performing, billing for, and being paid for work under the Excluded Sections, as a matter of law, Fox should have known that Porter expected additional compensation for its work under the Excluded Sections.[5]

¶ 22 The facts set forth in Fox's opposition papers do not create a material dispute regarding whether (1) Fox requested Porter to perform the work under the Excluded Sections, (2) Porter expected additional compensation from Fox for the work, and (3) Fox knew or should have known that Porter expected additional compensation. Also, Fox does not dispute the amounts provided by Porter regarding the value of the work for which it was uncompensated.[6] Therefore,

4. The fact reads as follows: "Mr. Cox explained that [Porter] and [Wood] had several conversations about the subcontract between Fox and Porter about 2 issues; 1 is that there was a specification section left out of the subcontract and 2 is that a specification was included in the subcontract that should have been left out." Although any statements made by Porter would not be inadmissible hearsay because it would have been spoken by a party opponent, *see* Utah R. Evid. 801(d)(2), no statement is specifically attributed to Porter in the fact submitted by Fox.

5. Fox also asserts that it is proper to consider parol evidence when interpreting the scope of the subcontract not because it is ambiguous on its face, but rather because the trial court accepted that section 02680 was not part of the subcontract due to Porter and Fox's mutual agreement to strike the section when they discovered that it had been included by mistake. Fox seems to consider evidence of this subsequent mutual agreement parol evidence, and from this assumption concludes that all parol evidence should be considered to interpret the scope of the subcontract. However, because the subsequent mutual agreement between Fox and Porter to strike section 02680 was not a "contemporaneous [or prior] conversation[ ], representation[ ], or statement[ ]," *Spears v. Warr*, 2002 UT 24,¶ 19, 44 P.3d 742 (first alteration in original) (quotations and citations omitted), it is not parol evidence. Also, it is not disputed in this case that section 20680 is not part of the subcontract. Thus, Fox is mistaken that the trial court already had considered parol evidence when it agreed with the parties that section 02680 is outside the subcontract.

6. Fox claims that the amount of damages cannot be determined on summary judgment because Porter identified the additional amount Fox owed it in 1999, before litigation had commenced, as "approximately $40,000.00" rather than the $161,309.08 it now claims. However, the mere fact that a plaintiff changes its damage calculation cannot preclude summary judgment, otherwise summary judgment would never be appro-

the trial court did not err when it granted Porter's motion for summary judgment against Fox for $161,309.08.[7]

## II. Porter's Appeal

¶ 23 Porter contends the trial court erred when it ruled the statute of limitations barred Porter's claims against National. To make a claim upon the Bond, Porter had to initiate its action "within one year after the last day on which [Porter] performed labor or service or supplied the equipment or material on which the claim is based." Utah Code Ann. § 63–56–38(4) (2000). The trial court found, and National does not dispute on appeal, that the last day Porter worked on the Facility was May 16, 1999. Thus, while Porter's claim against Fox, which was initiated on March 16, 2000, fell within the one-year limit, its claim upon the Bond that named National as a party, which was initiated on March 14, 2001, fell outside the one-year limit and therefore would be barred.

¶ 24 Porter contends that the one-year limit does not apply in this case. First, Porter argues that the discovery rule tolled the statute of limitations because Fox concealed Porter's claim against National. Second, Porter argues that under rule 15(c) of the Utah Rules of Civil Procedure, its amended complaint adding National as a party and a claim upon the Bond relates back to its original complaint against Fox, which was filed within the one-year limit.

### A. Discovery Rule

¶ 25 In certain circumstances, the discovery rule tolls the statute of limitations period "until facts forming the basis for the cause of action are discovered." *Spears v. Warr*, 2002 UT 24, ¶ 33, 44 P.3d 742. However, under the discovery rule, it is a threshold issue whether the plaintiff knew or should have known about its cause of action before

the statute of limitations ran. *See Russell/Packard Dev., Inc. v. Carson*, 2003 UT App 316, ¶¶ 16–17, 78 P.3d 616. We conclude that no legal justification exists for Porter's delay in naming National and making a claim upon the Bond.

¶ 26 Utah Code section 63–56–39 provides that "[a]ny person may obtain from the state a certified copy of a bond upon payment of the cost of reproduction of the bond and postage, if any." Utah Code Ann. § 63–56–39 (2000). To obtain a copy of the Bond, Porter either (1) could have gone to the University, requested a copy of the Bond, and paid copying fees, or (2) could have mailed a request to the University with return postage and payment for copying fees. *See id.* Instead, Porter attempted to obtain a copy of the Bond by requesting verbally a copy from Fox and sending a letter to the University without copying fees or return postage, as required by statute.

¶ 27 Porter's conduct demonstrates that it knew of the Bond when it was considering litigation. Also, even if Porter had no specific knowledge of the Bond, as an experienced contractor, Porter should have known that a payment bond was required for construction of public structures, such as the Facility, under Utah Code section 63–56–38. *See id.* § 63–56–38 (2000). Yet Porter failed to invoke the procedure afforded it under the statute to learn the terms of the Bond. Thus, despite Fox's failure to disclose the terms of the Bond to Porter, there was no excuse for Porter's delay in bringing its claim upon the Bond. Because Porter knew or should have known about its claim at such a time that it still could have been brought within the one-year limit, the discovery rule cannot save Porter's claim from the statute of limitations.

---

priate where damage calculations become more precise as discovery proceeds. Also, it is the nonmoving party's obligation to present the trial court admissible evidence to dispute the moving party's amounts. *See* Utah R. Civ. P. 56(e). Fox simply has not done this.

7. Fox also claims that the trial court erred by awarding attorney fees to Porter, but Fox's only

argument is that the trial court should not have granted summary judgment in the first place. Because we disagree with Fox on this point and because Fox has advanced no additional argument upon which we could reverse the trial court's attorney fee award, we do not address the issue further.

## B. Relation Back Doctrine

¶ 28 Porter also argues that the relation back doctrine under rule 15(c) permits the filing date of its original complaint to serve as the filing date for its amended complaint, which would place it within the one-year limit. National argues, and the trial court ruled, that the relation back doctrine does not apply to Porter's amended complaint because there is no identity of interest between National and Fox.

### 1. Standard of Review

■■■ ¶ 29 We must first determine the standard of review of a relation back determination under rule 15(c). While determining whether an amended pleading relates back seems like a purely legal determination, the standard of review Utah courts apply to such determinations has changed with the posture of the case on appeal. For instance, in *Penrose v. Ross,* 2003 UT App 157, 71 P.3d 631, because the relation back issue was decided on appeal from an order granting a motion for summary judgment, the court applied a "correctness" standard, holding that "[t]he trial court correctly determined there was no identity of interest ... to permit relation back of the Amended Complaint." *Id.* at ¶¶ 7,21. However, in *Nunez v. Albo,* 2002 UT App 247, 53 P.3d 2, because the relation back issue was decided on appeal from an order denying a motion to amend, the court applied an "abuse of discretion" standard and "analyze[d] each of the trial court's reasons for denying [the] motion to amend in light of rule 15's liberal standard," despite the fact that one of its reasons was that "joining the [defendant] would be futile [because the statute of limitations had run]." *Id.* at ¶¶ 10,20.

¶ 30 The difference, we think, stems from a failure to distinguish clearly rule 15(a) analysis from rule 15(c) analysis. In the context of a motion to amend, the trial court has discretion to follow rule 15(a)'s dictate that leave to amend pleadings "shall be freely given when justice so requires." Utah R. Civ. P. 15(a). However, where one of the reasons the nonmoving party provides for denying the motion to amend is that the statute of limitations bars the claim, the anal-

ysis is not the weighing of equitable factors under rule 15(a), but rather a legal determination regarding whether the amendment would be futile. *See Sulzen v. Williams,* 1999 UT App 76,¶ 7, 977 P.2d 497 (characterizing the appeal from denial of a motion to amend as "challenging the trial court's apparent conclusion that the statute of limitations had run and that their effort to amend their complaint was thus futile"); *see also Jensen v. IHC Hosps., Inc.,* 2003 UT 51,¶ 139, 82 P.3d 1076 (recognizing "that a court may deny a motion to amend as futile if the proposed amendment would not withstand a motion to dismiss" (quotations and citation omitted)).

¶ 31 Thus, a correctness standard applies to a trial court's rule 15(c) analysis and an abuse of discretion standard applies to a trial court's rule 15(a) analysis. *See Wilcox v. Geneva Rock Corp.,* 911 P.2d 367, 369 (Utah 1996) (treating rule 15(a) analysis as logically prior to rule 15(c) analysis, but reviewing the relation back issue for correctness). This result is consistent with how a majority of courts, including the Court of Appeals for the Tenth Circuit, understand the doctrine. *See Slade v. United States Postal Serv.,* 875 F.2d 814, 815 (10th Cir.1989) (stating that application of rule 15(c) is "purely legal determination" that is reviewed de novo); *see also Miller v. American Heavy Lift Shipping,* 231 F.3d 242, 247 (6th Cir.2000) ("[W]e review de novo the district court's decision to deny relation back of an amended complaint to the original complaint.").

### 2. Utah's Relation Back Doctrine

■■■ ¶ 32 Utah's relation back doctrine developed out of the common law, under which a party could correct a clerical error without bringing a new action where the real parties were involved unofficially all along, *see Greenfield v. Wallace,* 1 Utah 188, 190 (1875), or make a "formal" change of party by amendment, such as substituting an administratrix for an heir where a cause of action already brought required the administratrix as a party. *Pugmire v. Diamond Coal & Coke Co.,* 26 Utah 115, 72 P. 385, 386 (1903). By the time these common law prin-

ciples were incorporated into rule 15(c),[8] the focus had expanded to whether (1) the amended pleading alleged only claims that "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," and (2) the added party had received notice that it would have been a proper party to the original pleading such that no prejudice would result from preventing the new party from using a statute of limitations defense that otherwise would have been available.[9] Utah R. Civ. P. 15(c); *see also, Doxey–Layton Co. v. Clark,* 548 P.2d 902, 906 (Utah 1976).

 ¶ 33 In *Doxey–Layton,* the first Utah case interpreting Utah's rule 15(c), the Utah Supreme Court held that an amendment substituting heirs for a husband and wife who had recently died, where the heirs had been informally involved in the litigation from the start, related back to the original pleading, and thus the statute of limitations did not bar the claim. *See* 548 P.2d at 905–06. The Court recognized that rule 15(c) generally does "not apply to an amendment which substitutes or adds new parties" because if it did, "the purpose of a statute of limitation would be defeated," but also recognized that "a mechanical use of a statute of limitations [should not] prevent adjudication of a claim" where "new and old parties have an identity of interest; so it can be assumed or proved the relation back is not prejudicial."[10] *Id.* at 906. "Such is particularly

valid where ... the real parties in interest were sufficiently alerted to the proceedings, or were involved in them unofficially, from an early stage." *Id.* Where a new party had sufficient notice that it would have been a proper party to the original pleading, the purpose of the statute of limitations is not defeated by applying the relation back doctrine to deprive the new party of its statute of limitations defense.

¶ 34 The court further elaborated the relation back doctrine in *Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214 (Utah 1984). In *Perry,* a general contractor brought a breach of contract claim against a subcontractor for defective doors the subcontractor had provided. *See id.* at 216. The subcontractor later filed an untimely third-party complaint against the supplier and manufacturer of the doors, in which its "only claim for relief stated that in the event [the subcontractor] was held liable to the general contractor [it] should have judgment against the supplier and the manufacturer in the same amount." *Id.* The court refused to apply the relation back doctrine because there was no "identity of interest between the original plaintiff, the defendant, and the third-party defendants other than privity of contract." *Id.* at 217.

¶ 35 The court then outlined the test for "identity of interest" as follows: when "the parties are so closely related in their busi-

**8.** Rule 15(c) of the Utah Rules of Civil Procedure states, "[W]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Utah R. Civ. P. 15(c). Even though Utah's rule 15(c) does not explicitly mention the addition of parties as has the corresponding federal rule since 1966, *see* Fed. R.Civ.P. 15(c), Utah's rule nonetheless embodies the same common law doctrines embodied in the federal rule regarding the addition of parties. *See Doxey–Layton Co. v. Clark,* 548 P.2d 902, 906 (Utah 1976) (citing commentary on the federal rule).

**9.** Misnomer cases, such as *Greenfield v. Wallace,* 1 Utah 188 (1875), are now analyzed under rule 15(c), and the analysis focuses upon whether there was sufficient notice to the real party of interest so that "relation back is not prejudicial." *Wilcox v. Geneva Rock Corp.,* 911 P.2d 367, 369

(Utah 1996) (quotations and citation omitted) (permitting relation back where the plaintiff had served the correct defendant, Geneva Rock Products, Inc., but had named the defendant in the complaint as "Geneva Rock Corporation"); *see Sulzen v. Williams,* 1999 UT App 76, ¶ 30, 977 P.2d 497 (where a complaint misnamed a parent as guardian, rather than the child by and through the parent as guardian, relation back was permitted because service on the parent was legally sufficient for service on the child, the child clearly was identified in the body of the complaint, and no prejudice would result).

**10.** This point is consistent with interpretations of the corresponding federal rule. *See* 3 James Wm. Moore, Moore's Federal Practice § 15.19[3][c] (3d ed. 2001) ("A court may find notice is adequate if there is a sufficient 'identity of interest' between the new defendant and the original one so that relation back will not be prejudicial.").

ness operations that notice of the action against one serves to provide notice of the action to the other" (Notice Transfer Test). *Id.* After *Perry,* the notice required under the relation back doctrine could be actual notice, such as being informally involved in the litigation from the start, or constructive notice under the Notice Transfer Test. No matter how the formal test is articulated, what is crucial is that at an adequately early stage of the litigation, the new party was "sufficiently on notice of the facts and claims that gave rise to the proposed amendment." 3 James Wm. Moore, Moore's Federal Practice § 15.19[1] (3d ed. 2001) ("The purpose of the statute of limitations is to prevent stale claims and the rationale of allowing an amendment to relate back is that once a party is notified of litigation involving a specific factual occurrence, the party has received the notice and protection that the statute of limitations requires.").

¶ 36 In accordance with these principles, in two subsequent cases Utah courts refused to relate an amended pleading back where the added parties had no constructive notice (and clearly no actual notice) that they would have been proper parties under the original pleading. First, in *Russell v. Standard Corp.,* 898 P.2d 263 (Utah 1995), the court held, in a libel case, that there was not sufficient identity of interest between an Ogden newspaper on the one hand, and the Salt Lake Tribune and the Associated Press on the other hand, merely because they "adopt and incorporate the same material, pursuant to contractual agreements with one another." *Id.* at 265. Second, in *Dansie v. Anderson Lumber Co.,* 878 P.2d 1155 (Utah Ct.App.1994), this court held, in a personal injury case involving a faulty handrail in a new home, that there was not sufficient identity of interest between a general contractor, a realtor, and a realty

company on the one hand and a lumber company and manufacturer on the other hand. *See id.* at 1158 n. 7. In neither case was it reasonable to assume that notice of the substance of the claims against the original parties served as notice to the added parties.

¶ 37 In two other cases, this court permitted relation back where the new party had sufficient actual notice that it would have been a proper party under the original pleading. In *Hebertson v. Bank One, Utah, N.A.,* 1999 UT App 342, 995 P.2d 7,[11] this court stated that relation back would be proper where the new parties (1) had actual notice of the original pleading, which clearly described an injury that had occurred at the time the new parties owned the property on which the injury had occurred, and (2) had the same insurer and attorney as the named party, the current owner of the property. *See id.* at ¶ 19 n. 9. In *Nunez v. Albo,* 2002 UT App 247, 53 P.3d 2, this court permitted relation back where the new party, a hospital, had actual notice of a malpractice claim against one of its doctors. *See id.* at ¶ 30.

¶ 38 Later cases apply the same common-law test, but articulate it in a slightly different way: "[P]arties have an identity of interest when 'the real parties in interest were sufficiently alerted to the proceedings, or were involved in them unofficially, from an early stage.' "[12] *Sulzen v. Williams,* 1999 UT App 76,¶ 14, 977 P.2d 497 (citation omitted); *see Nunez,* 2002 UT App 247 at ¶ 29, 53 P.3d 2; *Hebertson,* 1999 UT App 342 at ¶ 18, 995 P.2d 7. Thus, despite changes in how the relation back doctrine has been articulated, Utah courts have consistently applied the test developed under the common law: whether no prejudice would result because the added party had actual or constructive

**11.** While *Hebertson v. Bank One, Utah, N.A.,* 1999 UT App 342, 995 P.2d 7, involved analysis of the savings statute, the court explicitly adopted the test under rule 15(c) and applied it to the facts of the case to reach its savings-statute holding. *See id.* at ¶ 18.

**12.** The shift in terminology appears to stem from the *Russell* court's misinterpretation of *Perry* as holding that identity of interest, a test for constructive notice, is a necessary, rather than a

sufficient, condition for relation back. *See Russell v. Standard Corp.,* 898 P.2d 263, 265 (Utah 1995) ("[R]ule 15(c) does not apply to amendments that add new parties 'who have no identity of interest with existing parties.' " (quoting *Perry,* 681 P.2d at 217)). The shift in terminology, however, has not affected the substance of the doctrine, but does explain the trial court's failure to focus upon whether National had actual notice of the substance of Porter's claims against Fox.

notice that it would have been a proper party to the original pleading.

¶ 39 For example, in *Sulzen* this court permitted relation back where parents were named in and served with a complaint in which their children were "clearly identified" as the negligent parties. 1999 UT App 76 at ¶ 15, 977 P.2d 497. Because the children lived with the parents, the court concluded that "it is entirely reasonable to assume that [the children] were sufficiently alerted to the proceedings." *Id.*

¶ 40 Therefore, in spite of terminological shifts, the test for relation back under rule 15(c) remains as follows: whether (1) the amended pleading alleged only claims that arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading and (2) the added party had received (actual or constructive) notice that it would have been a proper party to the original pleading such that no prejudice would result from preventing the new party from using a statute of limitations defense that otherwise would have been available.

### 2. Porter's Amended Pleading

¶ 41 National does not dispute that Porter's added claim upon the Bond naming National as a party "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in [Porter's] original pleading." Utah R. Civ. P. 15(c). National is liable only to the extent Porter succeeds on its claims against Fox, and no additional facts would be necessary to demonstrate National's liability other than its obligation under the Bond, which it does not dispute.

¶ 42 Thus, the only issue is whether National had sufficient actual or constructive notice that it would have been a proper party to the original pleading before the one-year limit expired. The focus of the trial court, and the parties below, was on whether the relationship between Fox and National was sufficient to satisfy the Notice Transfer Test (constructive notice) for identity of interest. The trial court ruled that the common interest between Fox and National was "privity of contract," which "as held in *Perry*, . . . is an insufficient identity of interest to allow for

relation back." We do not disagree, but the Notice Transfer Test is a test for constructive notice, and is merely one way of demonstrating that an added party had sufficient notice to avoid prejudice. In addition, the relationship between National and Fox consists of more than privity of contract.

¶ 43 Porter argues that under the Notice Transfer Test the relationship between a general contractor and surety "as a matter of law . . . is always sufficiently close to meet the 'identity of interest' standard with respect to bond claims." We do not adopt such a per se rule. There is no reason to infer, as a matter of law, that a general contractor would have alerted a surety to such a pleading. Thus, the Notice Transfer Test is not satisfied by the general contractor/surety relationship alone.

¶ 44 However, a consideration not addressed by the trial court, but that could be relevant to imputing notice to a new party, is whether it shared counsel with a named party prior to the running of the statute of limitations. *See Hebertson v. Bank One, Utah, N.A.*, 1999 UT App 342, ¶ 19 n. 9, 995 P.2d 7 (considering having the same attorney and insurance carrier relevant to relation back analysis). While National and Fox currently have the same counsel, the record does not indicate whether they shared counsel prior to the lapse of the one-year limit or, if so, whether the nature of counsels' representation of National was such that imputation of notice is appropriate. *See Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 190 (3d Cir.2001) (refusing to impute notice where the new party did not retain the same counsel as the named party until after the statute of limitations had run).

¶ 45 Furthermore, the parties and the trial court focused only upon the Notice Transfer Test. Application of the relation back doctrine also would be appropriate if National had sufficient actual notice of the original pleading prior to the running of the statute of limitations. Thus, we also remand for a determination of whether National had actual notice of the nature of Porter's claims against Fox, and therefore against the Bond, before

the statute of limitations ran.[13] *See Sam Finley, Inc. v. Interstate Fire Ins. Co.,* 135 Ga.App. 14, 217 S.E.2d 358, 362–63 (1975) (remanding for a determination of whether a surety had actual notice of the original complaint against the general contractor after deciding that the claim upon a payment bond arose out of the same facts as the original claims).

¶ 46 Thus, we reverse and remand for a determination of all facts relevant to determining whether National had constructive or actual notice that it would have been a proper party to Porter's original complaint.

### C. Attorney Fees

¶ 47 Finally, Porter claims that the trial court abused its discretion by awarding National attorney fees in the amount of $25,000 plus costs.[14] Given our disposition of Porter's appeal, we vacate the award.

### CONCLUSION

¶ 48 Because Fox did not set forth facts sufficient to create a disputed issue of material fact regarding Porter's implied-in-fact contract claim, the trial court did not err by concluding that Porter was entitled to judgment as a matter of law. Therefore, we affirm.

¶ 49 Because Porter's failure to bring its claim upon the Bond and against National within the one-year limit was due to Porter's own negligence, the discovery rule cannot save Porter's claim from the applicable statute of limitations. Porter's rule 15(c) claim cannot be determined as a matter of law on the facts before the trial court. The record is insufficient for us to determine whether National had actual or constructive notice of Porter's original complaint. Therefore, we reverse and remand. We also vacate the award of attorney fees to National.

13. There are some indications that National did have actual notice. For example, Fox's president testified that the relationship between Fox and National was extremely close: "They pretty much knew when I cut my fingernails, yes."

¶ 50 WE CONCUR: PAMELA T. GREENWOOD, Judge and GREGORY K. ORME, Judge.

14. While Porter challenges the reasonableness of the award, it does not challenge the trial court's statutory authority to award reasonable attorney fees and costs to the prevailing party, in this case National, to a "suit upon a payment bond." Utah Code Ann. § 63–56–38(6) (2000).